CASE 100—AGREED CASE TO DETERMINE THE RIGHT OF THE CITY OF
COVINGTON TO HAVE PLAINTIFF'S CHILDREN REMOVED TO THE CITY
PEST HOUSE—JUNE 16.

# Hengehold v. City of Covington.

APPEAL FROM KENTON CIRCUIT COURT.

AFFIRM

BOARDS OF HEALTH—POLICE POWER—VALIDITY OF ORDINANCE PROVID-
ING FOR REMOVAL OF SMALLPOX PATIENTS TO PEST-HOUSE.

Held: 1. In the exercise of the police power, the Legislature may
create boards of health, and invest them with the powers neces-
sary and proper to prevent the spread of disease, and may con-
fer upon cities authority to make regulations for the health of
their communities.

2. Under the Kentucky Statutes, section 2059, providing for the ap-
pointment of boards of health in cities of 10,000 or more inhabit-
ants, and providing that such boards shall have the same power
within their cities as local boards for counties have within
their jurisdiction; and Id., section 2055, empowering county
boards to inaugurate and execute such sanitary regulations as
they may consider expedient to prevent the outbreak and spread
of epidemic diseases, and to that end to bring the infected popu-
lation under prompt and proper treatment, an ordinance of a
city of the second class providing for the removal of smallpox
patients to a pest house in good sanitary condition, provided with
proper nurses and physicians, is valid.

3. Under Kentucky Statutes, section 3058, part of the charter of
cities of the second class, empowering the council to establish and
enforce quarantine laws and regulations to prevent the intro-
duction and spread of contagious diseases, the council may by
ordinance make reasonable regulations, in addition to those pro-
vided by the general law establishing the local boards of health,
to prevent the spread of epidemic diseases; and therefore an or-
dinance providing for the removal of smallpox patients to the
pest house upon the order of less than a quorum of the city
board of health, or upon the order of the health officer, is valid,
though general law confers such power upon "the board."

B. F. GRAZIANI AND G. F. BOUGHNER FOR APPELLANT.

F. J. HANLON FOR APPELLEE.

(No briefs in record.)

Hengehold v. City of Covington.

By an agreed case, this court is asked to determine these questions: First. Under the Constitution and Laws of the State, and the act for the government of cities of the second class, has the city of Covington power to pass an ordinance providing for the removal of smallpox patients to a pest house? Second. Can such city by ordinance vest such power, to remove such persons so afflicted to a pest house, in its health board, or in any three members thereof, or in the health officer? Third. Can such removal of persons so afflicted be made by the board of health or of the health officer, notwithstanding the physician attending the patient shall certify in writing that the patient's life would be endangered by such removal, or that he has good and careful attention, and his removal would not be advisable as a sanitary measure? The agreed facts are that appellant's three children aged, respectively, five, eight, and thirteen years, were sick with smallpox, and that the mayor of the city, chairman *ex officio* of the board of health, and the members of the board of health and their officers, desired to remove the patients to the city pest house, in Kenton county, which removal was prevented by the father. It is also agreed that the disease was very prevalent in the city; that the pest house was in good sanitary condition, with competent nurses and physicians in charge, and ample room and accommodations.

It is to be regretted that, owing to the urgency of the questions presented, counsel have not had time to brief the case further than to furnish a copy of the ordinance of the city and a reference to statutes. By section 2059, Kentucky Statutes, it is made the duty of the council of every city of 10,000 or more inhabitants to appoint a board of

health of six persons, three of whom are required to be competent physicians; such board to elect a competent physician as health officer, who, as well as the mayor, is ·to be *ex officio* a member of the board. It is further provided that "such local boards shall have the same powers within their respective cities and towns as local boards for counties are invested with by this chapter." Chapter 63. Section 2060 provides for the compensation of the health officer, and for a penalty upon physicians or heads of families failing to report cases of certain named diseases. Section 2055 makes provision for the appointment of county boards, and provides that "such local boards are empowered, and it shall be their duty, to inaugurate and execute, and to require the heads of families and other persons to execute, such sanitary regulations as the local board may consider expedient to prevent the outbreak and spread of cholera, smallpox, yellow fever, scarlet fever, diphtheria and other epidemic diseases; and to this end may bring the infected population under prompt and proper treatment during premonitory and other stages of disease. . . . This section gives power to the boards to go upon and inspect premises believed to be in an unclean and infectious condition, to enforce regulations adopted by the State board, and contains provisions, also, for reports to the boards of cases of such epidemic, diseases. By section 2056 the local boards of the border counties are empowered to declare a quarantine against contagious and infectious diseases prevailing in other States or counties, and large powers are given to them to prevent the importation of infected persons or articles. Section 3058, Kentucky Statutes (being section 1, subd. 4, of the act for the government of cities of the second class), gives to the council au-

thority "to establish and enforce quarantine laws and regulations, to prevent the introduction and spread of contagious diseases in the city and within two miles thereof," to provide for the destruction of diseased food products, to establish and maintain hospitals in and out of the city, to condemn property therefor, "to secure the general health of the inhabitants by any necessary measure," and "to constitute a board of health and elect or appoint necessary health officers." The city ordinance of Covington organizing and establishing the board of health provides, in section 3, for the establishment of a pest house, and for the expense of its management, and the payment of the physicians and nurses and others in charge. By section 4 it is provided that "whenever the smallpox, yellow fever, cholera, or other contagious or infectious diseases, shall exist in the city, said board, or any three members thereof, or the health officer, may cause any person afflicted with such disease to be removed to the pest house, as they may deem it necessary as a sanitary measure. But if the physician attending the diseased person shall certify in writing that the life of such person would be endangered by such removal, or that he or she has good and careful attention, or that his or her removal would not be advisable as a sanitary measure, then such removal shall or shall not be made, in the discretion of said board." By section 5 the members of the board and the health officer are invested with police authority in the performance of their duties.

In view of the necessity for a prompt disposition of this case, we shall state the conclusions we have reached as briefly as possible, without any attempt at an elaborate review of the authorities.

The statutes and the ordinance referred to are intended

as an exercise of the police power of the government to promote the public welfare, even at the expense of private rights. The preservation of the public health has always been held a proper exercise of police power. Said Mr. Justice Bradley in Boston Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed., 989: "Whatever differences of opinion may exist as to the extent and boundaries of the police power, and however difficult it may be to render a satisfactory definition of it, there seems to be no doubt that it does extend to the protection of the lives, health, and property of the citizen." There can be no doubt that in order to prevent the spread of disease, and to provide healthful conditions for the public, boards of health and like commissions may be created, and invested with power necessary and proper for such purposes; and, in determining the validity of the acts of such boards and their officers, a liberal construction is justified, in view of the public good to be accomplished. Inhabitants of Perth Amboy v. Smith, 19 N. J. Law, 52. There can be no doubt of the power of the State Legislature to create State boards of health for the preservation of the general health of the State, to confer upon cities and counties authority to make regulations for the health of their communities, and even to create separate corporations, differing from the political subdivisions, with like powers within their limits. Wilson v. Sanitary Dist., 133 Ill., 466, 27 N. E., 203; Nicoulin v. Lowery 49 N. J. Law, 391, 18 Atl., 513. Both in England and the United States such powers have been almost uniformly delegated to boards of health of municipal corporations to enact rules for the preservation of the public health having the force of law, within the respective communities, and it would seem, that in the absence of express authority, municipalities have an im-

plied power to enact reasonable ordinances to preserve the public health and to prevent and remove nuisances. (Dillon, Mun. Corp., sec. 308; Baker vs. Boston, 12 Pick, 193; (22 Am. Dec., 421).

Under its general powers, to guard against epidemic diseases, a board of health may control and isolate persons affected with the disease; and this power seems to be expressly delegated to the local boards by the provision that they are empowered "to inaugurate and execute . . . such sanitary regulations as the local board may consider expedient, to prevent the outbreak and spread of . . . epidemic diseases, and to this end may bring the .infected population, under prompt and proper treatment, during premonitory and other stages of disease." It is certainly a reasonable regulation which provides for the removal of such cases to a pest house in good sanitary condition, provided with nurses and physicians for the treatment of patients suffering with the disease.

We are therefore of the opinion that the local board, or a quorum thereof, has undoubtedly power to order the removal of an infected patient to the pesthouse.

It is a narrower question, in view of the fact that the Legislature has given this power to the board, whether the municipality can confer such power upon less than a quorum, or upon the health officer appointed by the board.

But the charter of cities of the second class, gives power "to establish and enforce quarantine laws and regulations to prevent the introduction and spread of contagious diseases in the city and within two miles thereof; . . . to establish and maintain public hospitals within or without the city, . . . and to secure the general health of the inhabitants by any necessary measure." The general rule upon this subject, is, that laws establishing local boards

Hengehold v. City of Covington.

shall be construed together, so as to give effect to both. We think this rule should be applied in this case to the general law as to the powers of local boards, and the city charter expressly authorizing the municipality to enact regulations in that behalf, it follows, therefore, that the city is authorized to make additional reasonable regulations to prevent the spread of epidemic diseases.

The only remaining question, therefore, is, whether a regulation, empowering three members of the board, or the health officers elected by the board, to order the removal of a smallpox patient, is a reasonable regulation. We think it is, especially as there is provided an appeal to the board, and a requirement of action by the board itself, upon a certificate by the attending physician, that the removal would endanger the patient's life. In such cases the necessity for immediate action is imperative, and it is not unreasonable to permit the health officer, or less than a quorum of the board, to order such removal in a case where it does not appear that the removal would endanger the patient's life. For the reason given the judgment is affirmed.

Whole court sitting.