Clark, J.
The state department of health was created by the act of March 21,1917 (107 O. L., 522), Section 1232, General Code.
The same act provided for the creation of a public health council, Section 1234, General Code, and provided further, Section 1235, General Code, that it should be the duty of the public health council, and it should have the power, “To make and amend sanitary regulations to be of general application *53 throughout the state. Such sanitary regulations shall be known as the sanitary code.”
It is further provided that “Every regulation adopted by the public health council shall state the date on which it. takes effect, and a copy thereof, duly signed by the secretary of the public health council, shall be filed in the office of the secretary of state * * * and shall be published in such manner as the public health council may from time to time determine. Every provision of the sanitary code shall apply to and be effective in all portions of the state.” Section 1236, General Code.
The public health council of the state department of health thereafter adopted and promulgated a sanitary code and rules and regulations in respect there - to effective July 1, 1920, which sanitary code and regulations were certified to by the secretary of the public health council, state department of health, and filed with the secretary of state of the state of Ohio on the 25th day of May, 1920.
Eegulation 2 of the sanitary code, so adopted, named, classified and declared dangerous to the public health certain diseases and disabilities, and included in Class “B,” of such designated diseases, those known as chancroid, gonorrhea and syphilis.
Eegulation 18 of the sanitary code declares such diseases to be contagious, infectious, communicable and dangerous to the public health.
Eegulation 23 empowers the health commissioner of each city to make examination of persons reasonably suspected of having a venereal disease. All known prostitutes and persons associating with them shall be considered as reasonably suspected of having a venereal disease.
*54 Regulation 24 provides ■ that the health commissioner may quarantine any person who has, or is reasonably suspected of having, a venereal disease, whenever in his opinion quarantine is necessary for the protection of the public health.
It is claimed by the several petitioners:
1. That the sanitary code, in so far as it authorizes quarantine, examination and detention, is in contravention of Section 1, Article XIV of the Amendments to the Federal Constitution, and violates Section 5, Article I of the Constitution of Ohio.
2. That the sanitary code in so far as its regulations are attempted to be applied to these petitioners is in opposition to and violative of subsection C of Section 13031-17, General Code.
3. That the legislature is without power to delegate its lawmaking prerogative.
These questions will be considered in the order named.
Section 1, Article XIV of the Amendments to the Constitution of the United States, provides in part: “No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
Section 5, Article I of the Constitution of Ohio, provides ‘ ‘ The right of trial by jury shall be inviolate, except that, in civil cases, ’ ’ etc.
There is perhaps no provision of the federal constitution that is more overworked than the 14th amendment. Counsel generally are apparently unanimous in thinking that any judgment or finding *55 as against the client denies such client the equal protection of the laws, or is without due process of law.
It has been so many times decided that the 14th amendment does not limit the states in the proper exercise of police power, that citation of authority seems needless.
If authority were needed to support the proposition, sufficient would be found in the Slaughter-House cases, 16 Wall., 36, and in Holden v. Hardy, 169 U. S., 366. In the latter case, Mr. Justice Brown, in his learned opinion, has collated and digested the authorities.
Section 5, Article I of the Constitution of Ohio, has been so often passed upon that the principle with which we are here concerned may be regarded as fully and completely adjudicated. Board of Commissioners of Champaign County v. Church, Admr., 62 Ohio St., 318; State Board of Health v. City of Greenville, 86 Ohio St., 1, and C. H. & D. Rd. Co. v. City of Troy, 68 Ohio St., 510.
The right of the state through the exercise of its police power to subject persons and property to reasonable and proper restraints in order to secure the general comfort, health and prosperity of the state is no longer open to question. In the American constitutional system the power to establish the necessary police regulations has been left with the several states.
The adoption of the 14th amendment has not extended to the several states of the Union the restrictions imposed by the first ten amendments to the Constitution of the United States upon the federal government. Maxwell v. Dow, 176 U. S., 581; *56 Brown v. New Jersey, 175 U. S., 172, and United States v. Cruikshank, 92 U. S., 542.
The regulations here under consideration, if otherwise lawful, are not in conflict with any provision of the Federal or State Constitutions.
It is urged that the sanitary code, and the particular regulations in question, are in opposition to, and violative of subsection c of Section 13031-17, General Code.
Section 13031-17 prescribes the penalties to be administered as against those found guilty of violating any of the offenses set forth and defined in Sections 13031-13 and 13031-16, General Code. Subsection c of Section 13031-17 is in part as follows: “Any person charged with a violation of Section 13031-13 of the General Code, shall, upon the order of the court having jurisdiction of such case, be subjected to examination to. determine if such person is infected with a venereal disease * * * no person charged with a violation of 13031-13 of the General Code shall be discharged from custody, paroled or placed on probation if he or she has a venereal disease in an infective stage unless the court having jurisdiction shall be assured that such person will continue medical treatment until cured or rendered non-infectious.”
In the cases here considered it is to be observed that both of the petitioners were charged with violations of Section 13031-13, General Code. Regulation 24 provides that such infected persons shall be subject to quarantine. The statutory provision is that such infected persons shall not be discharged from custody, paroled or placed on probation.
*57 No inconsistency is found as between tbe regulations complained of and tbe provisions of subsection c of Section 13031-17, General Code. In either event quarantine is established.
Quarantine in the sense herein used means detention to the point of preserving the infected person from contact with others. The power to so quarantine in proper case and reasonable way is not open to question. It is exercised by the state and the subdivisions of the state daily. The protection of the health and lives of the public is paramount, and those who by conduct and association contract such disease as makes them a menace to the health and morals of the community must submit to such regulation as will protect the public.
It is claimed further in behalf of the petitioners that the legislature is without power to delegate its lawmaking authority. The distinction between power granted to legislate and power granted to administer marks the difference between the contention urged and the true.question herein to be considered. It is not now necessary to consider the ques - tion of delegated legislative power. It is sufficient that the power of the legislature to authorize administrative authority on the part of boards of health, and subdivisions of the state, and to authorize the adoption by such instruments of its choice of rules and regulations affecting public health, including the power to detain and quarantine, has been considered and upheld in People v. Tait, 261 Ill., 197; State v. Normand, 76 N. H., 541; Highland v. Schulte, 123 Mich., 360; City of Taunton v. Taylor, 116 Mass., 254; Isenhour v. State, 157 Ind., 517; Blue v. Beach, 155 Ind., 121, and Hengehold v. City of Covington, 108 Ky., 752.
*58 That the legislature in the exercise of its constitutional authority may lawfully confer on boards of health the power to enact sanitary ordinances having the force of law within the districts over which their jurisdiction extends, is not an open question. This power has been repeatedly recognized and affirmed. Polinsky v. People, 73 N. Y., 65; Metropolitan Board of Health v. Heister, 37 N. Y., 661, and Health Dept. of City of N. Y. v. Knoll, 70 N. Y., 530.
In Ex parte Johnston, 180 Pac. Rep., 644 (40 Cal. App., 242), it was decided by the district court of appeals, all judges concurring: “The adoption of measures for the protection of the public health is a valid exercise of the police power of the state, as to which the Legislature is necessarily vested with large discretion, not only in determining what are contagious and infectious diseases, but also in adopting means for preventing their spread, as by imposing on health department of city the duty to take measures to prevent the spread of disease afflicting any person.”
Ex parte Johnston presents a case identical in fact with the instant cases. The petitioner, Johnston, was a woman, who was originally talcen into custody without warrant, found to be diseased, and thereupon by order of the health commissioner of the city of Los Angeles was ordered confined for treatment with a view to effecting a cure. In its consideration of the question there raised, the court says:
“In the absence of any'showing to the contrary, we must, upon the evidence before us, assume that petitioner was, when subjected to quarantine regulations, and is now, afflicted with and suffering from gonococcus infection, which * * * is, with lep *59 rosy, smallpox, typhus fever, and a number of other diseases, declared to be contagious and infectious. The sole question thus presented is the right of proper authorities to isolate and place her in quarantine. By the section of the Code just cited it is made the duty of the health officer, knowing of the existence of any such contagious or infectious disease, to take such measures as may be necessary to prevent the spread thereof. The isolation of one afflicted with a contagious or infectious disease is a reasonable and proper, indeed the usual, measure taken to prevent the increase and spread thereof.
“It appears that petitioner was originally taken into custody without a warrant, and, basing his argument upon such arbitrary action, counsel draws a lurid picture of what might result from maladministration of the law by those charged with the duty of enforcing it. The fact that the authority so delegated may, in a given case, be abused, is no legal reason for denying the power to quarantine summarily in a case where grounds therefor concededly exist. * * * Assuming the action of the police officer arbitrary and unjustified, she is not restrained of her liberty by reason thereof, but on account of a disease with which she was subsequently found to be afflicted, and in the ascertainment of which fact there appears to have been no arbitrary or unlawful action taken.”
It is true that in State, ex rel. Adams, v. Burdge, 95 Wis., 390, it was held that the state board of health of Wisconsin was a purely administrative body and had no regulatory powers, and that none could constitutionally be delegated to it. The Burdge case apparently stands alone. Throughout *60 our investigation we have been unable to find that it has been approved or followed in any jurisdiction. In the Burdge case it was decided further that there was no power in the Wisconsin state board of health to quarantine as against smallpox, or to compel vaccination, or to exclude children from the publio schools because of non-vaccination.
The right to quarantine by exclusion has been upheld in the recent case of Zucht v. King, decided by the supreme court of the United States on November 13, 1922, 43 S. C. Rep., 24. Mr. Justice Brandéis in the opinion regards and states it as:
(1) “Settled that a state may, consistently with the federal Constitution, delegate to a municipality authority to determine under what conditions health regulations shall become operative.”
(2) “Settled that the municipality may vest in its officials broad discretion in matters affecting the application and enforcement of a health law.”
(3) “Settled that in the exercise of the police power reasonable classification may be freely applied, and that regulation is not violative of the equal protection clause merely because it is not all-embracing.”
We do not subscribe to either the principle or pronouncement of the Burdge case. We prefer and adopt the latest judgment of the supreme court of the United States. It is founded in reason and sustained by authority.
It is'bur conclusion that the provisions of sections 1232, 1234, 1235 and 1236, General Code, creating a state department of health, a public health council, and authorizing such public health council “to make and amend sanitary regulations to be of general ap *61 plication throughout the state,” and to provide for the certification, publication and enforcement of such regulations, are lawful and valid exercise of legislative power.
■ "Writs refused; petitioners are remanded to the respondent, the commissioner of health of the city of Akron, Ohio, and the petitions are dismissed.

Judgment for respondent.

Marsh at,u, O. J., Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.