ANNIE E. BROCK, Appellant, *vs.* VADA C. STINES *et al.* Appellees.

*Opinion filed April 19, 1913.*

1. DEEDS—*when testimony of physician as to grantor's incapacity is overcome.* Testimony by a physician who saw the grantor four times during the month in which the deed was executed, but not on the day of its execution, that in his opinion she was suffering from senile debility, kidney trouble and hardening of the arteries, and that he thought she was not capable of transacting ordinary business, is overcome by disinterested testimony that at different times during such month, and about the time the deed was made, she was bright mentally, conversed intelligently and was able to transact ordinary business.

2. SAME—*when evidence that grantor had long entertained the idea of making a deed is competent.* Where undue influence by the grantee is charged, evidence of statements by the grantor showing that she had for some years been intending to make the deed is admissible, as tending to show that the execution of the deed was not the result of undue influence.

3. SAME—*what does not establish undue influence by grantee.* There is no presumption of undue influence in case of a conveyance from parent to child, and in the absence of any proof showing a fiduciary relation or domination by the child, evidence that the child and her husband were in the room when the deed was executed and that the officer taking the acknowledgment was summoned by the grantee's husband does not establish that the deed was the result of undue influence.

4. SAME—*no money consideration is necessary to support conveyance from parent to child.* A conveyance from parent to child

which is a gift or voluntary settlement will not be set aside because no money consideration was paid.

5. SAME—*when delivery is presumed.* Where a deed of voluntary conveyance from parent to child is found in the possession of the grantee after the grantor's death a delivery of the deed is presumed, in the absence of evidence to the contrary.

APPEAL from the Circuit Court of Fulton county; the Hon. R. J. GRIER, Judge, presiding.

HARVEY H. ATHERTON, for appellant.

M. P. RICE, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Harmon T. Martin and Mary E. Martin, his wife, lived on a farm of one hundred and sixty acres owned by him near the village of Ipava, in Fulton county, up to the year 1904, when the farm was sold and they moved to Ipava. They had two children,—Annie E. Brock, wife of J. F. Brock, and Vada C. Stines, wife of Charles Stines. Vada C. Stines and her husband had lived with her parents on the farm and moved with them to Ipava. J. F. Brock was the purchaser of the farm and occupied it with his' wife after 1904. Two thousand dollars of the proceeds of the farm were used to purchase lot 14 in Easley's First addition to Ipava, and the deed was made to Mary E. Martin. The dwelling house on the lot was occupied as a home by Harmon T. Martin, Mary E. Martin, Vada C. Stines and Charles Stines until the death of Mr. and Mrs. Martin, and has been occupied since that time by Mr. and Mrs. Stines. Harmon T. Martin died on August 1, 1911, and Mary E. Martin died on April 11, 1912, leaving Annie E. Brock and Vada C. Stines her only heirs-at-law. On April 16, 1912, a deed of said lot to Vada C. Stines, made and acknowledged by Mary E. Martin on March 25, 1912, was filed for

record, and on April 22, 1912, Annie E. Brock filed her bill of complaint in this case in the circuit court of Fulton county against Vada C. Stines and Charles Stines, asking to have the deed declared null and void and removed as a cloud on her title to an undivided half of the lot as heir-at-law of Mary E. Martin, and to have the lot partitioned. Viewing the transaction in a variety of aspects, she charged that the deed was null and void on the following grounds: (1) That Mary E. Martin was mentally incapable of executing it; (2) that she was induced to execute it by fraud, duress, threats and undue influence of the defendants; (3) that the deed was without any consideration; (4) that it did not operate as an executed conveyance for want of delivery. The defendants answered, denying each of the charges, and the chancellor, after hearing the evidence, found that none of the alleged reasons for setting aside the deed existed and dismissed the complainant's bill at her cost. This appeal was prosecuted from the decree.

Fourteen witnesses were examined as to the mental condition of Mary E. Martin,—the same number on each side. To sustain the charges of the bill, the complainant, her husband, her son, her father-in-law, the attending physician and two others detailed facts from which they formed opinions that Mrs. Martin did not have sufficient mind and memory to transact ordinary business. The witnesses for the defense were not interested in the event of the suit and had fair opportunities to form opinions as to the mental condition of Mrs. Martin, and they detailed circumstances tending to prove that she was not lacking in mental capacity, and gave their opinions that her mental condition was clear and that she was capable of making the deed. About four years before her death she underwent a surgical operation for umbilical hernia and the operation was not a success, but she was able to be about the house and to attend to her ordinary affairs until a little over a month before her death. The doctor was first called to see her on December

27, 1911, and saw her eight times up to January 14, 1912, and during that time she was up and around the house most of the time. He prescribed medicine for her in February, 1912, but did not see her during that month nor up to March 8. He saw her four times in the month of March, 1912, and she was confined to her bed at that time. His opinion was that she suffered from senile debility, kidney trouble and hardening of the arteries, and on account of her weakness and want of clearness in expression or thought he concluded she was not capable of transacting ordinary business. If he had seen her frequently his opinion would have been entitled to great weight, but it is quite probable that his four visits, none of which were on the day when the deed was made, were at times when Mrs. Martin was suffering most and was most affected by disease. There was disinterested testimony that at different times during March, and about the time the deed was made, she was bright mentally, conversed intelligently and was able to transact ordinary business.

The next question was whether the deed was procured by undue influence of the defendants, and there was nothing tending to prove that they took part in the transaction except that Charles Stines called on James A. Morrison, a police magistrate, and told him that Mrs. Martin wanted the deed made, and he and his wife were present when the deed was signed and acknowledged. The officer, after preparing the deed, went to the house where Mrs. Martin was in bed, and Mrs. Stines got a platter and laid it on the bed in front of her. The officer laid the deed on the platter, telling her there was the deed she was to sign. Mrs. Stines handed her mother a pen, and she put the pen in the ink, and, after looking the deed over a little while, signed it. Nothing was said at the time and the officer did not know whether she read the deed or not, but she looked at it and appeared cheerful and willing and there was nothing to indicate that she was under any compulsion. The officer then said he

would take the deed over to his office and finish it up and Mr. Stines could bring it back. The acknowledgment was filled out and the deed was delivered to Mr. Stines. There was no evidence tending to prove the existence of any confidential or fiduciary relation, or that the relative situations of parent and child had been changed in any way so that the daughter became the dominant personality or had or exercised any influence over her mother. There was evidence to show a want of undue influence.

. When the property was bought, in 1904, Mr. and Mrs. Martin and Mr. and Mrs. Stines looked at the property, and Mrs. Martin told the owner that the place was larger than she cared for, but as it was to be Vada's when she died she would buy it, because it was the only place Vada wanted in town, and if Vada would stay with them until they died she was to have the place and she would deed it to her. About two years before the hearing of the cause Mr. Martin, in the presence of his wife, said the understanding was when they bought the property that Mrs. Stines was to have it at their death; that Mrs. Martin had never made the deed, and she had been operated on and her health had been poor, and that he would rather she would go to work and make the deed. Mrs. Martin replied that she was gaining in health and thought there was plenty of time yet for the deed to be made. About two or three months before Mr. Martin died there was another conversation with him in Mrs. Martin's presence, in which he said that she had not made the deed yet, and that he began to feel pretty bad and would "kind of like" for her to do it before something happened. Mrs. Martin said she was in fairly good health and there was ample time yet for that to be done; that the property was bought, intending if Mrs. Stines stayed with them until they died it was to be hers, and that there was ample time to make the deed and she was going to do it. In the last of February or first of March, when Mrs. Martin was failing, she said she had not

made the deed yet and was going to see to it right away. The appellant says that the evidence of statements indicating intention some years before the deed was made was not competent because too remote, and objection on that ground was made at the hearing. The fact that Mrs. Martin had entertained the same intention for a long period of time tended to show that the making of the deed was not the result of undue influence exercised at the time the deed was made, and it was proper to admit the evidence.

There was no valuable consideration for the deed, but it was a voluntary conveyance by Mrs. Martin to her daughter.

The only direct evidence as to delivery has already been stated, and it consisted of the fact that the officer said he would send the deed back by Mr. Stines when completed, and that he did so.

The first charge, that Mary E. Martin was mentally incapable of executing the deed, was not sustained by the evidence. There is no presumption of undue influence in the case of a conveyance by a parent to a child, (*Waters* v. *Waters,* 222 Ill. 26; *Sears* v. *Vaughan,* 230 id. 572;) and no fiduciary relation being shown, there was not sufficient evidence to establish the second charge. The conveyance from a parent to a child, which is a gift or voluntary settlement, will not be set aside because no money consideration was paid, natural love and affection being a sufficient consideration. (*Danville Seminary* v. *Mott,* 136 Ill. 289; *Young* v. *Young,* 113 id. 430.) This disposes of the third charge. The deed was found in the possession of the grantee after the death of the grantor, from which fact a delivery is presumed in the absence of evidence to the contrary. (*Blake* v. *Ogden,* 223 Ill. 204; *Harshbarger* v. *Carroll,* 163 id. 636.) There was no evidence to overcome that presumption, and this disposes of the fourth ground of attack upon the deed.

The decree is affirmed.

*Decree affirmed.*