(No. 22188.—

Gustav H. Bunge *et al.* Plaintiffs in Error, *vs.* The Down-ers Grove Sanitary District, Defendant in Error.

*Opinion filed April 21, 1934—Rehearing petition stricken June 7, 1934, for violation of rule 44.*

ALSCHULER, PUTNAM, FLANNIGEN & JOHNSON, (EDWARD F. STREIT, of counsel,) for plaintiffs in error.

DANIEL S. WENTWORTH, (JOE A. PEARCE, LEONARD F. CARMODY, ROSS G. McCLURE, and MARY V. DRAPER, of counsel,) for defendant in error.

Mr. JUSTICE JONES delivered the opinion of the court:

Gustav H. Bunge, Herbert A. Grotefeld, George H. Bunge and Gordon C. Bunge, attorneys at law, co-partners doing business as Bunge, Grotefeld & Bunge, filed a declaration in assumpsit in the circuit court of DuPage county against the Downers Grove Sanitary District to recover attorneys' fees in connection with four special assessment cases. From a verdict and judgment in favor of plaintiffs for $25,000 the district prosecuted an appeal to the Appellate Court for the Second District. The judgment was there reversed without a remanding order, and the cause is in this court on *certiorari*.

The declaration avers that on June 26, 1929, plaintiffs entered into a certain written agreement with defendant whereby plaintiffs were employed to take charge of all legal work of defendant, including all special assessment proceedings, for the compensation therein set forth; that on August 10, 1929, the agreement was supplemented so as to provide for the payment of attorneys' fees in special assessment proceedings abandoned or discontinued by defendant without plaintiffs' fault or negligence; that plaintiffs entered into such employment and so continued until December 21, 1929, when defendant without just cause repudiated the contracts and discharged plaintiffs; that plaintiffs have always been able, ready and willing, and

have offered, to perform all duties required according to the terms of the contracts, and that there is due plaintiffs the sum of $26,586 for services rendered thereunder; that on August 10. plaintiffs and defendant entered into another written contract whereby defendant agreed to pay plaintiffs a further sum of $11,500 for work previously performed in special assessment proceeding No. 19, which had been dismissed and upon which account $2000 had been paid. A bill of particulars was filed. One of the items was for balance due of $7500 under the contract relating to special assessment No. 19. The other items relied upon a *quantum meruit* for services rendered in special assessment proceedings Nos. 26, 27 and 28. No. 26 was for the construction of a sewage disposal plant, including outlet sewer and laterals, and was practically identical with No. 19, which had been dismissed. No. 27 was for the construction of storm-water drains, involving condemnation of private property. No. 28 was for the construction of sanitary sewers for a portion of the district. The amount claimed for services rendered under those proceedings aggregated $26,600. The personnel of the board of trustees of the district changed on October 16, 1929, and thereafter the resolution repudiating the contracts with plaintiffs was passed. The board abandoned proceeding No. 26 and constructed an addition to the disposal plant, but the cause was not dismissed and is yet pending in the county court. Proceeding No. 27 was abandoned and proceeding No. 28 proceeded to a public hearing, and, so far as disclosed by the record, is still pending. The defenses pleaded were: *Ultra vires;* illegality of the contracts; want of consideration; prematurity of action; value of services; payment, and general issue.

The Appellate Court held that defendant was without power, under the statute, to build the storm sewers or to build the disposal plant by special assessment, and that therefore the contracts of plaintiffs, being, in effect, a part

of and governed by such proceedings, were *ultra vires* and void. That court did not find the facts, in whole or in part, different from the findings of the circuit court, and it must be held to have found the facts the same as the circuit court and regarded them as not sufficient to sustain the action. Therefore the only question presented to this court is whether the Appellate Court correctly applied the law to the facts. *Abdill* v. *Abdill,* 292 Ill. 231.

Among the questions conclusively settled were, that Gustav H. Bunge was not an employee of the district and was not disqualified from entering into the contracts with it, that vouchers for the amount due under proceeding No. 19, payable out of the first installment of proceeding No. 26, were not accepted as payments, and that the amount of the verdict was not in excess of the value of the services rendered.

Section 7 of the Sanitary District act, (Smith's Stat. 1933, chap. 42, par. 306,) under which defendant was organized, provides that the board of trustees of any sanitary district organized under the act shall have power to provide for the disposal of the sewage and of the construction and maintenance of "channels, drains, ditches and outlets, for carrying off and disposing of the drainage (including the sewage) of such district together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner, including pumps and pumping station. * * * Such board may also treat and purify such sewage so that when the same shall flow into any lake or other water-course, it will not injuriously contaminate the waters thereof, and may adopt any other feasible method to accomplish the object for which such sanitary district may be created." It requires that "such sanitary districts shall proceed as rapidly as is reasonably possible to provide sewers and a plant or plants for the treatment and purification of its

sewage * * * of suitable kind and sufficient capacity to properly treat and purify such sewage so as to conduce to the preservation of the public health, comfort and convenience and to render said sewage harmless, in so far as is reasonably possible to animal, fish and plant life." Appropriate penalties for any violation of such provisions are provided. Section 19 provides: "The board of trustees shall have the power to build and construct and to defray the costs and expenses of the construction of drains, sewers, or laterals, or drains and sewers and laterals and other necessary adjuncts thereto, including pumps and pumping stations, made by it in the execution or in furtherance of the powers heretofore granted to such sanitary district by special assessment or by general taxation, or partly by special assessment and partly by general taxation." Each of the improvements embraced only a portion of the district and constituted a local improvement.

The first question presented by counsel is whether or not the disposal plant and storm-water drains were necessary adjuncts or additions to the sewer system within the meaning of the statute. In *Judge* v. *Bergman,* 258 Ill. 346, we said: "It would not be possible to lay down, in advance, a hard and fast rule by which to determine what is or what is not an 'adjunct' or 'addition,' within the meaning of section 7 of the Sanitary District act. Each case must be determined by its own facts and surroundings." When the original disposal plant was constructed the population of the district was about 4000. In 1928, when proceeding No. 19 was instituted, the population was about 12,600, increasing the dry weather flow of the sewage. There was an infiltration of storm water into the sanitary sewers estimated to be as high as twenty million gallons daily. The plant was insufficient to take care of the flow, causing the sanitary sewers to run under pressure. The sewage was backed up into dwellings and other property. The sanitary district was bound to provide adequate fa-

cilities for the proper treatment and purification of the sewage in accordance with the law. The infiltration of storm water and the inefficiency of the old disposal plant prevented the system from functioning properly. The proceedings for a new disposal plant of sufficient capacity and for storm-water drains to dispose of the infiltration were designed to correct the evils.

The statute in express terms makes it the duty of the district to provide an adequate disposal plant. It is an adjunct to the sewers and drains, the same as the pumps and pumping stations mentioned in the act. They are all designed to accomplish the purpose for which the law was enacted—i. e., the protection of the public health and the prevention of the pollution of streams and waters. It can not be seriously contended that sewers constructed merely to carry off storm water from streets or private property, without regard to their effect upon a sanitary sewer system, are an adjunct to the sewer system, but when it appears that the infiltration of storm water prevents the functioning of a sanitary sewer system, it is the duty of the district, under the statute, to remedy the difficulty. A means adopted primarily for that purpose is an adjunct to the sewer system although it may incidentally serve another use, otherwise a sanitary district would have no power to build a levee or cut a channel to divert waters from flooding its pumping station or disposal plant, if so doing would incidentally benefit other lands. The record shows that the storm-water drains were designed primarily to enable the sanitary sewer system to function properly. The district had the matter under consideration for a considerable period of time and had the advice and counsel of its engineers before deciding as to the best method of remedying the difficulties. No abuse of its discretion appears in this record. We are of the opinion that the proposed storm-water sewers were necessary adjuncts to the sanitary sewer system within the meaning of the statute.

Special assessment proceeding No. 28 for the construction of sanitary sewers was expressly within the terms of the act. The proceedings for the construction of the improvements and the contracts for services thereunder were not *ultra vires*.

Defendant contends that it is not liable because the contracts were contingent upon completion of the improvements. It has been repeatedly held by this court that where a special assessment proceeding is not carried to completion, either because of the invalidity of the ordinance or because it is dismissed before confirmation, the municipality cannot avoid payment by setting up the contingent nature of the contract but is liable out of the general fund. (*Maher* v. *City of Chicago,* 38 Ill. 266; *Gray* v. *City of Joliet,* 287 id. 280.) Defendant having repudiated its contracts with plaintiffs, they were entitled to treat the contracts as rescinded and recover upon *quantum meruit* so far as they had performed. (*Lake Shore and Michigan Southern Railway Co.* v. *Richards,* 152 Ill. 59.) The contracts with plaintiffs having been repudiated, the fact that proceedings Nos. 26 and 28 were not dismissed of record is no defense to the action.

The basis of the action as limited by the bill of particulars was not upon the contracts for services under proceedings Nos. 26, 27 and 28, but upon *quantum meruit* because of defendant's repudiation of the contracts. That being the issue, the trial court did not err in admitting testimony as to the value of such services.

Several objections to the giving and refusing of instructions are urged by defendant. We have examined the instructions and are of the opinion there was no reversible error in that respect.

Inasmuch as the Appellate Court found the facts the same as the trial court but incorrectly applied the law thereto, the judgment of the Appellate Court is reversed and the judgment of the trial court is affirmed.

*Appellate Court reversed, circuit court affirmed.*