(No. 22751.—)

THE PEOPLE *ex rel.* George W. Bailey, Appellee, *vs.* THE DOWNERS GROVE SANITARY DISTRICT, Appellant.

*Opinion filed February 15, 1935—Rehearing denied April 5, 1935.*

Daniel S. Wentworth, and Robert F. Dewey, for appellant.

George P. Foster, and Herbert A. Grotefeld, for appellee.

Mr. Justice Stone delivered the opinion of the court:

The circuit court of DuPage county, on appellee's petition therefor, awarded a writ of *mandamus* directing the appellant sanitary district to put in repair, take charge of and maintain certain storm-water sewers and drains lying within and contructed by the village of Downers Grove. Appellant brings the cause here for review.

Appellant filed a demurrer to the petition for *mandamus,* which was overruled and appellant was ruled to answer. It thereafter filed an answer to the petition, which was stricken. On default of further answer the writ was awarded against it.

The petition for *mandamus* alleges that there exists in the village of Downers Grove a system of storm-water drains which had been constructed and maintained by the village in accordance with the powers vested in it by statute. It is there set out that the territory lying within the boundaries of the village, as well as certain other territory adjacent thereto, lies within the boundary of the appellant sanitary district; that on August 30, 1926, the village trustees passed an ordinance transferring to the appellant district the maintenance and control of all such storm-water sewers then constructed or under construction or which might thereafter be constructed by the village within the limits thereof and within the present or future limits of the sanitary district; that the appellant district on September 15, 1926, by resolution and ordinance accepted and

approved the ordinance of the village whereby it became and was the duty of the sanitary district to maintain and keep in repair such storm-water drainage system. It is averred that the district undertook to, and did, exercise such jurisdiction over the storm-water drains and continued so to do until January 24, 1930, at which time the storm-water drains, and their openings and inlets at various points throughout the village, became broken or stopped, and that on that date the sanitary district, by resolution, rescinded and repudiated the action of its board taken on the 18th day of August, 1926, and refused to further maintain or repair the storm-water drainage system in accordance with its agreement.

Appellant in its answer alleged that by the act under which it was created its powers are limited to the construction and maintenance of plants for the treatment of sewage and the maintenance of outlets and the construction and maintenance of a sanitary sewer system necessary for the accomplishment of the treatment and purification of such sewage, and that it was not empowered to construct or maintain a system of storm-water drains but such was the duty of the village. The answer also avers that a portion of the village and storm-water drains extends beyond the boundaries of the sanitary district; that the ordinances and resolutions set out in the petition did not and could not confer power on the district over storm-water drains, and so appellant did not and could not become legally bound to maintain such drains, and its failure so to do was not a breach of legal duty but to so attempt to exercise such jurisdiction is *ultra vires,* illegal, null and void, and therefore its resolution repudiating the agreement theretofore entered into afforded no ground for issuance of writ of *mandamus.*

The present area of the district is approximately 3880 acres, of which the portion of Downers Grove within the district comprises approximately 2800 acres. The remain-

ing portion, consisting of 325 acres, is in the village of Westmont and 755 acres of unincorporated territory. It appears from the answer that the total indebtedness of the district cannot exceed $175,000, and that the total revenue obtainable by taxation is approximately $23,340. It is also averred that the storm-water drain system within the village, which the village seeks to have the district maintain, is in nowise connected with, an adjunct to or a necessary part of the sewer system maintained by the district, and if it were so connected additional sewers and plants required would cost more than the district could pay. It is also in the answer pointed out that the outlets of storm-water sewers of the village of Downers Grove lead into different water-courses and watersheds; that the village of Westmont has constructed and maintains storm-water drains separate and apart from the sanitary district sewer system and that it has never relinquished control over them. It is also averred that the storm-water drains of the village of Downers Grove have been constructed by the village at higher levels than those of the district sewers; that connection of the storm-water drains with the sanitary sewer system would cause flooding of the latter, forcing sewage into the basements and homes connected with the sanitary sewer system and would cause an excess flow to the plant, which would interfere with the proper treatment of the sewage; that to so combine those systems would require a new and larger main sewer costing approximately $2,000,000 and the erection of a larger plant at a cost of approximately $1,000,000, which is entirely unnecessary, as storm water does not require sewage treatment. It is also averred in the answer that the daily flow in the sanitary sewers is sufficient to prevent the stranding of solids therein, and any connection of the storm-water system therewith is wholly unnecessary.

Other averments are made going to the point that the appellant sanitary district has no authority or jurisdiction

over the storm-water drainage system, and it is averred that if the court were to hold that under the Sanitary District act it had power to maintain a storm-water drainage system, the act offends against section 13 of article 4 of the constitution, which prohibits the inclusion in an act of the General Assembly of a subject not expressed in the title. The motion to strike this answer was based on the ground that it raised the same legal defense as raised by the demurrer.

It is argued here that the court erred in issuing the writ of *mandamus;* that it was error to strike the answer of the appellant; that appellant is not vested with the statutory power to operate and maintain storm-water sewers, and that if the statute be construed to confer such power it is invalid. It is also contended that the judgment of the circuit court denied appellant due process of law, contrary to the fourteenth amendment of the United States constitution, in that it requires the appropriation of tax money of the entire district to maintain storm-water sewers in a small portion of the district and some of which drains are beyond the boundaries of the district.

Appellee insists that there is involved in this appeal but a question of pleading, and appellant having answered over after its demurrer was overruled, waived the constitutional questions and the question of *ultra vires* raised by the demurrer, thus leaving the only question in the case the propriety of the court's order striking appellant's answer. It is a general rule of pleading that where a party desires to have a review of an order of the trial court overruling his demurrer he must abide the demurrer, and if he pleads over he waives the demurrer. (*Heimberger* v. *Elliot Switch Co.* 245 Ill. 448.) But that rule may not be invoked in *mandamus,* since the writ of *mandamus* is not one of right and will not be issued in a doubtful case. The petitioner is required to show a clear right to the writ. (*Murphy* v. *City of Park Ridge,* 298 Ill. 66; *People* v. *City of Streator,*

258 id. 273; *People* v. *Chicago and Eastern Illinois Railroad Co.* 262 id. 492; *Duncan Townsite Co.* v. *Lane,* 245 U. S. 308.) It is also the rule in a case such as this, that where a constitutional question is raised by demurrer such question is not waived by answering over after the demurrer. (*Przykopenski* v. *Citizens' Coal Co.* 270 Ill. 275.) Pleading over after demurrer does not waive innate and substantial defects in a petition for *mandamus* which would render it insufficient to sustain the writ, and the question whether the petition is so far defective is open for consideration on the assignments of error. (*People* v. *Powell,* 274 Ill. 222; *Chicago and Alton Railroad Co.* v. *Clausen,* 173 id. 100; *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 132 id. 161.) Appellee's contention on this point cannot be sustained.

Appellee next argues that the court did not err in striking the answer of appellant, because that answer raised only questions already determined by the ruling on the demurrer. The demurrer went only to the allegations of the petition, while the answer raised affirmative defenses not put in issue either directly or indirectly by demurrer. The answer was based on the limitation of appellant's power under the statute, the distinct and separate character of the storm-water sewers, the lack of power or financial ability of the district to maintain the storm-water system, and its lack of power to levy tax on property in one municipality within its boundaries for storm-water drains in another municipality not within the boundaries of the district. It is also there charged that if the Sanitary District act be construed to so empower the district it is in violation of the constitution, as such power is not expressed in the title of the act. It is thus seen that the answer is not a re-statement alone of the issues settled on demurrer.

Appellant argues also that as appellee's motion to strike the answer admitted the affirmative defenses there raised there remains for determination only questions of law. The

primary question in the case is whether the appellant district is empowered, under the act, to take jurisdiction over storm-water sewers of the village of Downers Grove. If not, the resolution of the district purporting to accept such jurisdiction is void as *ultra vires*. It is admitted in the briefs that the storm-water sewers are not connected with or a part of the sanitary district sewage system.

Under section 7 of the Sanitary District Sewage Disposal act the board of trustees is empowered to provide for the disposal of the sewage, the construction and maintenance of "channels, drains, ditches and outlets, for carrying off and disposing of the drainage (including the sewage) of such district together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner, including pumps and pumping stations," etc. Whether a separate system of storm-water sewers can be said to come under the jurisdiction of a sanitary district depends upon whether they may be said to be "such adjuncts and additions thereto as may be necessary or proper" to cause the channels of the district to accomplish the purpose for which they are designed. The words "adjuncts" and "additions," as used in the Sanitary District act, mean auxiliary channels to bring the sewage and drainage from the various sewer systems of the district into the main channel thereof. *Judge* v. *Bergman*, 258 Ill. 246.

Appellee says that this court has held in *Bunge* v. *Downers Grove Sanitary District*, 356 Ill. 531, that storm-water drains are adjuncts or additions to the sewer system of the district. In that case, which was a suit for attorney fees claimed to have been earned in special assessment proceedings, certain of which were for the construction of storm-water drainage sewers, the record showed that an infiltration of storm water into the sanitary sewers existed to such an extent as to affect the efficiency of the sewage

disposal plant, and the storm-water drains proposed to be constructed under the special assessment proceeding were for the purpose of preventing such infiltration. The distinction is obvious. It was in that case also observed that "it cannot be seriously contended that sewers constructed merely to carry off storm water from streets or private property, without regard to their effect upon a sanitary sewer system, are an adjunct to the sewer system, but when it appears that the infiltration of storm water prevents the functioning of a sanitary sewer system, it is the duty of the district, under the statute, to remedy the difficulty." It is admitted by the motion to strike the answer, which motion we treat as in the nature of a demurrer, that the storm-water sewers are in nowise connected with or necessary for the efficient operation of the sewers of the sanitary district. These storm-water drains are no part of the sanitary district system, and the maintenance of such storm-water drains is not within the powers conferred by the statute on the district. (*Bunge* v. *Downers Grove Sanitary District, supra.*) This fact, alone, is sufficient to deny the appellee the right to a writ of *mandamus*. It is fundamental that a petition for *mandamus* must set forth a clear right to the writ and all facts necessary to show that right. *People* v. *Town of Mount Morris,* 145 Ill. 427; *Swigert* v. *County of Hamilton,* 130 id. 538.

The agreement of 1926 between the appellant and the village of Downers Grove was *ultra vires* and void. The court erred in construing the Sanitary District act as empowering the district in this case to maintain the storm-water drainage system of Downers Grove. It will therefore serve no useful purpose to remand this cause for further proceedings.

The judgment of the circuit court awarding the writ is erroneous and is reversed. *Judgment reversed.*