Edward J. Benscoter et al., and Springfield Township, Plaintiffs-Appellees, v. City of Springfield, Illinois, Defendant-Appellant.

Gen. No. 9,907.

Opin-
ion filed March 9, 1954. Rehearing denied April 5, 1954. Released for
publication April 5, 1954.

I. J. FEUER, City Attorney, and HUGH J. GRAHAM, JR., Special Assistant City Attorney, both of Springfield, for appellant.

ROSCOE BONJEAN, and PAUL F. WANLESS, both of Springfield, for appellees.

MR. PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

This is a suit in equity brought by a number of individual property-owner plaintiffs and by Springfield Township, a municipal corporation, against the City of Springfield, Illinois, a municipal corporation, for injunction against an alleged nuisance. The original complaint was against the defendant City of Springfield and the Springfield Sanitary District, a municipal corporation, which includes the territory of the City of Springfield. The nuisance complained of was that there were offensive odors and dangers to health, as to the individual plaintiffs and damages to the roads and bridges of the Springfield Township, caused by the overflow of the contents of the East Cook Street outlet sewer into a ditch near the homes of the individual plaintiffs.

The Springfield Sanitary District, defendant in the original complaint, filed its motion to dismiss on the ground that it had no jurisdiction over the said sewer and no lawful right to control the discharge of storm waters therefrom. This motion was allowed and thereafter, the plaintiffs voluntarily dismissed their suit against the Springfield Sanitary District, leaving only the City of Springfield as defendant. Thereafter, plaintiffs filed an amended complaint against the defendant City of Springfield.

The defendant City of Springfield filed an answer to the amended complaint, in which it set up that the Springfield Sanitary District is charged with the duty

576

of providing sanitary treatment of the sewage discharged from the East Cook Street outlet. The answer denied any excessive volume of water. At the same time a motion to dismiss was filed by the defendant City of Springfield and a counterclaim was filed by the city against the Springfield Sanitary District, alleging that if there was a health nuisance, it was the duty of the Sanitary District to abate the same. The trial court denied a motion to dismiss the counterclaim but ordered that the trial of the issues raised by the counterclaim stand, pending determination of the issues between the original plaintiffs and the defendant City of Springfield. The matter was referred to a master in chancery for proofs and findings and the hearing was held before the master with the City of Springfield as the sole defendant. The master made his report and the trial court approving the report of the master, entered a decree overruling the exceptions to the master's report, overruling the motions of the defendant City of Springfield as to the necessity of having the Sanitary District as a party defendant and enjoined the defendant city and its agents from continuing the discharge of sewage from the outlet of the East Cook Street sewer into an open ditch near the homes of the individual plaintiffs and further provided that the order should take effect one year from the date of entry and that the defendant City of Springfield should take steps forthwith to abate the nuisance. From that decree the defendant City of Springfield has appealed to this court.

The issues presented on this appeal are as follows: (a) That it is the sole duty of the Springfield Sanitary District to treat the sewage delivered to the point of interceptor as to render it harmless so far as health is concerned: (b) That upon failure to so do, the Springfield Sanitary District should be prosecuted under the law: (c) That the Springfield Sanitary District is an

indispensable party in this suit: (d) That there is no evidence of overflow damage and that the health matter is the responsibility of the Sanitary District and not the City of Springfield.

There are some maps in the record but they do not aid this court except to fix the location. However, the evidence seems to bear out these facts: The main sewer of East Cook Street seems to be a combination storm water and sewage outlet, five feet in diameter. Originally the City of Springfield constructed a brick sewer six feet in diameter and this main sewer for East Cook Street extended to the east city limits. This six-foot sewer was constructed in 1886. In 1915 the City of Springfield constructed a brick sewer extension five feet in diameter, from the east city limits to a point 1,000 feet due east of the city limits. Both these main East Cook Street sewers, the one constructed in 1886 and the one in 1915 were combination storm and sewage outlets, that is, the sewer carried sewage in normal dry weather, and both sewage and rain water in rainy weather. This extension sewer outlet, five feet in diameter, had as its outlet an open ditch, running in a generally southeasterly direction, through the center of the area in which most of the individual plaintiffs now reside. That with the growth of the area, in 1946, three additional sewers were constructed by the City of Springfield, all connected with the big or main outlet sewer of East Cook Street. This open ditch at the terminus of the East Cook Street sewer runs in a southeasterly direction about 1,500 feet to a pumping station of the Springfield Sanitary District. In 1925 and 1926, the Springfield Sanitary District constructed an intercepting two-foot sewer, connecting with the terminus of the East Cook Street five-foot sewer. At the terminus of the East Cook Street five-foot sewer, there is an iron weir, which in normal weather and under normal flow conditions, diverts the water flowing from the five-

578

foot sewer into the two-foot sanitary sewer of the Springfield Sanitary District. Said weir or diverter normally takes care of the entire flow from the five-foot sewer but in time of rain, the discharge of the five-foot sewer is such that it rises over the weir and flows into the open ditch and thus causes the unhealthy condition and offensive odors.

The appeal does not raise any question as to the existence of a public nuisance. The appeal thus admits that an unwholesome, unsanitary and offensive condition exists and only raises the question as to whose duty and responsibility it is, to abate the nuisance. Thus, the question before this court on appeal may be narrowed to this point: Is it the duty and responsibility of the defendant City of Springfield to abate this nuisance?

To arrive at the answer, we must first ascertain the jurisdiction and authorities of the two corporations. We must ascertain where the duty and responsibility for disposal of sewage ends for the City of Springfield and where the duty and responsibility of the Springfield Sanitary District begins.

■ To begin with, no municipal corporation can dump its sewage into a convenient place and put onto the recipient area the duty to dispose of or handle it. If the position of the City of Springfield is correctly understood, its duty ends at the terminus of the five-foot sewer and it then becomes the duty of the Springfield Sanitary District to take over from there. To support that contention, the defendant city cites paragraph 306 of chapter 42, Illinois Revised Statutes (1951) [Jones Ill. Stats. Ann. 122.008]. That section reads: "The board of trustees of any sanitary district organized under this act shall have power to provide for the disposal of the sewage thereof including the sewage and drainage of any incorporated city, town or village within the boundaries of such district and to

save and preserve the water supplied to the inhabitants of such district from contamination and for that purpose may construct and maintain an enclosed conduit or conduits, main pipe or pipes, wholly or partially submerged, buried or otherwise, and by means of pumps or otherwise cause such sewage to flow or to be forced through such conduit or conduits, pipe or pipes to and into any ditch or canal constructed and operated by any other sanitary district, after having first acquired the right so to do, or such board may provide for the drainage of such district by laying out, establishing, constructing and maintaining one or more channels, drains, ditches and outlets, for carrying off and disposing of the drainage (including the sewage) of such district together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner, including pumps and pumping stations and the operation of the same. Such board may also treat and purify such sewage so that when the same shall flow into any lake or other watercourse, it will not injuriously contaminate the waters thereof, and may adopt any other feasible method to accomplish the object for which such sanitary district may be created . . . .

"Every such sanitary district shall proceed as rapidly as is reasonably possible to provide sewers and a plant or plants for the treatment and purification of its sewage, which plant or plants shall be of suitable kind and sufficient capacity to properly treat and purify such sewage so as to conduce to the preservation of the public health, comfort and convenience and to render said sewage harmless, insofar as is reasonably possible to animal, fish and plant life. . . ."

It will be noted by the reading of the above quoted section, that the Sanitary District is authorized to

provide for the drainage of the district, "by laying out, establishing, constructing and maintaining one or more channels, drains, ditches and outlets, for carrying off and disposing of the drainage (including the sewage) of such district together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner . . . ."

The defendant City of Springfield also cites paragraph 317a of chapter 42, Illinois Revised Statutes (1951) [Jones Ill. Stats. Ann. 122.022], which only deals with the methods or authority granted to finance such sanitary districts and sheds no light on the question before the court.

█ While the two paragraphs cited, namely paragraphs 306 and 317a of chapter 42, Illinois Revised Statutes (1951) [Ill. Rev. Stats. 1951, ch. 42, §§ 306, 317a; Jones Ill. Stats. Ann. 122.008, 122.022], are in the main permissive, yet they do set forth the powers of the sanitary district to do certain things, namely the carrying off and disposing of the drainage (including the sewage) and the means of financing such work. The statute provides the machinery for the establishment of sanitary districts, and their financing, and we must of necessity look to the decisions of the courts to ascertain the duties imposed upon such districts to arrive at a decision in this case.

In the case of *Bunge v. Downers Grove Sanitary District,* 356 Ill. 531, cited by defendant City of Springfield, the court there said: "The sanitary district was bound to provide adequate facilities for the proper treatment and purification of the sewage in accordance with the law. The infiltration of storm water and the inefficiency of the old disposal plant prevented the system from functioning properly. The proceedings for a new disposal plant of sufficient capacity and for

storm-water drains to dispose of the infiltration were designed to correct the evils.

"The statute in express terms makes it the duty of the district to provide an adequate disposal plant. It is an adjunct to the sewers and drains, the same as the pumps and pumping stations mentioned in the act. They are all designed to accomplish the purpose for which the law was enacted, *i. e.,* the protection of the public health and the prevention of the pollution of streams and waters. It can not be seriously contended that sewers constructed merely to carry off storm water from streets or private property, without regard to their effect upon a sanitary sewer system, are an adjunct to the sewer system, but when it appears that the infiltration of storm water prevents the functioning of a sanitary sewer system, it is the duty of the district, under the statute, to remedy the difficulty."

A later case, *People v. Downers Grove Sanitary District,* 359 Ill. 601, presents a different question. There it was sought to order the sanitary district to put in repair, take charge of and maintain certain storm-water sewers and drains lying within and constructed by the Village of Downers Grove. The court in that case, distinguishing that case from the case of *Bunge v. Downers Grove Sanitary District,* 356 Ill. 531, said that the storm-water drains are no part of the sanitary-district system, and the maintenance of such storm-water drains is not within the powers conferred by the statute on the district.

Applying these two cases to the facts in this case, it would seem that the case of *People v. Downers Grove Sanitary District,* 359 Ill. 601, is not applicable, but that the case of *Bunge v. Downers Grove Sanitary District,* 356 Ill. 531 is the law governing this case. In this case, the terminus of the East Cook Street sewer was at a point about 1,000 feet east of the city limits. This sewer was a combination storm and sewage outlet.

In dry weather, this sewer carries sewage only. In wet weather it carried both sewage and rain water. The sanitary district, in 1925, and 1926, apparently recognizing its duty to dispose of this sewage, diverted the flow from this sewer, from an open ditch into a two-foot sanitary district sewer, which connects with its disposal plant. This two-foot sewer is ample in dry weather, but totally inadequate in wet weather with the result that the excess water, mixed with sewage, overflows into the old ditch and causes the offensive odors and dangers to health complained of. It is true that the sanitary district has no control over the East Cook Street sewer, and no control over the discharge of the storm waters therefrom. But it would appear that its duty begins at the point where the City of Springfield discharges this sewage and storm water from the terminus of its East Cook Street sewer, and that from that point, it is the duty of the sanitary district to convey by means of ditches, drains, sewers or otherwise, this water mixed with sewage, to its disposal plant. While the discharge of the sewer is in time of wet weather, largely storm water, yet it also contains sewage, and thus mixed, is a health hazard and must be disposed of, so as to protect the health of the community. If the sewer that intercepts this discharge flow was large enough, no problem would exist. But the flow from a five-foot sewer cannot be accommodated through a two-foot sewer, and under the language of the *Bunge* case, it is the duty of the sanitary district to take steps to remedy the difficulty. The sewer carrying the sewage from the end of the East Cook Street sewer to the sanitary district disposal plant, is an adjunct to the system of the sanitary district. As it was said in the case of *Judge v. Bergman*, 258 Ill. 246: "It would not be possible to lay down, in advance, a hard and fast rule by which to determine what is and what is not an 'adjunct' or 'addition,' within the meaning of Section 7

583

of the Sanitary District Act." Each case must be decided upon its own peculiar facts.

In the case of *Bunge v. Downers Grove Sanitary District*, 356 Ill. 531, which was a suit for attorney fees claimed to have been earned in special assessment proceedings, certain of which were for the construction of storm-water drainage sewers, the record showed that an infiltration of storm water into the sanitary sewers existed to such an extent as to affect the efficiency of the sewage-disposal plant, and the storm-water drains proposed to be constructed under the special assessment proceeding were for the purpose of preventing such infiltration. It was in that case also observed that: "It cannot be seriously contended that sewers constructed merely to carry off storm water from streets or private property, without regard to their effect upon a sanitary sewer system, are an adjunct to the sewer system, but when it appears that the infiltration of storm water prevents the functioning of a sanitary sewer system, it is the duty of the district, under the statute, to remedy the difficulty."

In considering the above cited cases and the statutes applicable, we must come to the conclusion that the duties and powers of a sanitary district are to receive, dispose and treat sewage, so that said sewage is rendered harmless. In doing so, the district must construct drains, disposal plants and such other facilities to receive, dispose and treat this sewage. It has the power and the duty to lay out, establish and maintain one or more channels, ditches and outlets for carrying off and disposing of the drainage (including the sewage) of such district, together with such adjuncts and additions thereto as may be necessary or proper to cause such channels or outlets to accomplish the end for which they are designed, in a satisfactory manner. In doing so, the sanitary district may even build additions or alterations to the storm-water drains

584

of a city, village or town within its limits, provided such work is necessary to carry out the primary purpose of the district, namely, disposal of and rendering sewage harmless, insofar as is possible, to animal, fish and plant life.

█ In this case, in the light of the case of *People v. Downers Grove Sanitary District,* 359 Ill. 601, the sanitary district would be under no duty to repair, operate or maintain the sewers of the City of Springfield. That duty remains with the City of Springfield. But when the City of Springfield, as in this case, brings sewage or storm waters mixed with sewage, to the point where the sanitary district takes over, then it would seem to be the duty of the sanitary district to provide adequate facilities to take care of this sewage and storm waters, to the end that the health of the community be preserved. Thus the drain or sewer from the end of the East Cook Street sewer, to the disposal plant of the sanitary district would seem to be an adjunct of the sanitary district, and not of the City of Springfield and any duty of abating the nuisance must fall upon the sanitary district and not upon the city.

The Springfield Sanitary District is an indispensable party to this suit and the trial court was in error in entering its order that the trial of the counterclaim by the City of Springfield stand, pending determination between the original plaintiffs and the City of Springfield. The sanitary district should be brought in as a party and all action against the city should be stayed and if plaintiff does not see fit to follow this course within sixty days, the trial court is directed to dismiss the complaint for want of equity.

*Reversed and remanded with directions.*

MR. JUSTICE HIBBS took no part in the consideration or decision of this case.