STATE OF IOWA, Appellee, v. P. H. KONZEN, Appellant.

CRIMINAL LAW: Evidence—Similar Claims as Showing Motive
1   and Scheme to Defraud. In prosecution for obtaining money from a railway company by falsely pretending to have been injured by its negligence, evidence that defendant had, prior thereto, made similar claims against other railway companies was admissible to show the motive, scheme, and purpose to defraud.

CRIMINAL LAW: Evidence—Similar Fraudulent Claims Against
2   Railway Company as Showing Intent to Defraud. In prosecution for obtaining money from a railway company by falsely pretending to have been injured by its negligence, where there

was evidence of the falsity of the claim made by defendant, evidence that defendant had, prior thereto, made similar claims against other railway companies, held admissible to show the intent of defendant to defraud in the case at bar, there also being evidence from which the jury could find that the prior claims had been fraudulently made.

CRIMINAL LAW: Evidence—Previous Similar Claims—Sufficiency 3 of Evidence Showing Falsity of Claims. In prosecution for obtaining money from a railway company by falsely pretending to have been injured by its negligence, evidence reviewed, and held sufficient to show that prior claims made by defendant for injuries against other railway companies were false and fraudulent.

*Appeal from Cerro Gordo District Court.*—C. H. KELLEY, Judge.

MARCH 18, 1919.

REHEARING DENIED JULY 7, 1919.

DEFENDANT was indicted on the charge of obtaining money by false pretenses, entered a plea of not guilty, was convicted, and appeals.—*Affirmed.*

*Robinson & Boomhower*, for appellant.

*Ralph S. Stanbery* and *B. B. Burnquist*, for appellee.

GAYNOR, J.—The defendant was indicted by the grand jury of Cerro Gordo County, on the 17th day of September, 1917, for the crime of cheating by false pretenses. He entered a plea of not guilty, was tried and convicted, and from such conviction appeals.

It is charged in the indictment that, on or about the 14th day of May, 1917, the defendant pretended to one S. J. Beardslee, who was then and there agent of the Minneapolis & St. Louis Railroad Company, that, on the 3d day of May, 1917, he had slipped on a banana peeling, and had fallen from the platform, when attempting to alight from one of the company's passenger trains at its depot at Mason City,

and in falling, struck his back on the step of the car, injuring his spine and causing partial paralysis of the lower limbs, from which injury he was then and there suffering; that these representations were false; that he had not slipped and fallen from the platform of the Minneapolis & St. Louis Railroad Company, and that he made the statements and pretenses with intent to defraud the company; that the company believed the representations to be true, and paid to the defendant $800. It is charged that the truth and fact is that he did not slip and fall from the platform of the company on the 3d day of May, 1917, or on any other date, and that he did not receive any injury to his back on account of any such fall, and was not suffering from paralysis of the lower limbs; all of which was well known to the defendant.

The evidence shows that no one saw him fall; that the brakemen of the Minneapolis & St. Louis discovered him lying on the platform, apparently in a helpless condition, and had him carried into the depot, and from there to the hospital; that, while in the hospital, and a few days after he claimed to have been injured, a representative of the Minneapolis & St. Louis Railroad Company, a Mr. Beardslee, visited him, and found him sitting in an arm chair, with crutches by his side. The defendant told him his name was Joe Martin; that he was a single man, and had been making Des Moines his headquarters for ten years; and that he had been working as a carpenter. He said he could not walk without crutches, and had no use of his lower limbs; that he had slipped on a banana peeling, in coming down the steps of the smoker at Mason City, on the 3d day of May, 1917, and that, in getting off, he fell and struck his back on the edge of the steps; that the banana peeling was lying on the step from which he attempted to alight; that this was the busiest season of the year, and that he was losing $50 a week; that he would probably be laid up for four

months; that, if the company would be willing to pay him $800, he would settle. It appears that, upon defendant's statements and claim, this agent of the company settled with the defendant, and paid him the amount asked, on the 14th day of May, 1917.

However, the agent became suspicious, and sent for a detective from the Burns Agency. This detective appeared on May 14th, about 8:30 in the evening, and, before defendant had left the hospital, shadowed him; saw him leave the hospital about 8:30 in the evening; saw him go down the steps of the hospital to the Cecil Hotel, dressed in a long overcoat, and carrying a suit case, walking very slowly, dragging both legs, and carrying his weight on his crutches; saw him wait on the hotel steps about ten minutes, then put his crutches under his arms, pick up his suit case, walk to the corner, turn to the left, and walk into an alley behind the hotel. After reaching the alley, the detective saw him look around, take both crutches and his suit case in his left hand, and run into the alley. In a few minutes, he came out without the crutches, and walked down the street towards the depot. When he went into the alley, he had on a fedora hat, and when he came out, he had a derby; walked so fast that the detective had difficulty in keeping up with him; did not limp or drag his feet; walked first to the Northwestern depot, then crossed the street to the Rock Island depot, where he purchased a ticket to St. Paul. The detective followed him. In the meantime, defendant had put on a pair of cheap spectacles. The detective saw him take the train for St. Paul; saw him, when he reached St. Paul, go to the parcel room and check his grip, then get into a car and go to Selby Avenue, a residence district; saw him walk around there some time, then get into a car and go to Minnehaha Street, where he walked around for a time; then followed him back to the Union depot, where he sat in the ladies' waiting room for about ten minutes; saw him get a car

and ride back to Selby Avenue, repeating this until the detective, tired of following, left him.

He was arrested under the name of Joe Martin, when he came back to get his grip. At the time he was arrested, he denied that his name was Joe Martin; denied that he ever saw Mr. Beardslee or settled with him; said that he had never been at Mason City, and that the company would pay dearly for interfering with his liberty. The fact is, the defendant's name was not Joe Martin, but P. H. Konzen; he did not live in Des Moines; was not making Des Moines his home; was not a single man, but a married man; was not a carpenter, but a lawyer, and had practiced law both at Rock Rapids and Sioux City.

The sufficiency of the record, as made, to justify a conviction, is not seriously questioned. It is contended, however, that there was error in making the record.—error prejudicial to this defendant. The evidence complained of relates to other transactions, similar to the one complained of here; transactions which the State claims were substantially the same as the one involved in this suit; transactions in which the defendant had secured money from other companies, based upon practically the same claim as made here, and for injuries claimed to be substantially the same as the injuries claimed to have been suffered in this case.

The evidence complained of is to the effect that, in July, 1914, he made a claim against the Great Northern Railway Company, in which he alleged that he had slipped, in getting off one of its coaches; slipped on a banana peeling, and received injuries to his spine which affected the motion of his lower limbs; caused a numbness and a stiffness that he supposed he would never get over. At that time, he walked with crutches; was on crutches when he came to answer the call of the claim agent. During the negotiations touching that claimed injury, he wrote Mr. Jordan, assistant general claim agent, the following letter:

"You will recall that I was injured on June 23d, while alighting from a Great Northern train in Sioux City, and that, when you called on me in July, you asked me to write you when I got ready to talk settlement, and you would come down. I beg to say that I did not feel like taking up the matter of settlement until my condition became such that the doctors could give me some definite assurance as to the ultimate outcome of the injury. As I am now able to walk a little, with the aid of a crutch, and the doctors assure me that there is no danger of permanent paralysis. I feel that I can talk settlement as intelligently now as any time in the near future, inasmuch as the doctors tell me that it may be several months before I will be able to walk without a crutch. So if it will be convenient for you to do so, I wish you would come down the first of next week. If you will let me know what day you will be here, I will make it a point to be at the office, if I am at all able to make the trip."

A settlement was made afterwards. The amount paid does not definitely appear.

On the same line, and for the same purpose, the State was permitted to show that the defendant made a claim against the Chicago, Minneapolis, St. Paul & Omaha Railway Company for injuries received on the 4th day of January, 1917. In this claim, he alleged that he slipped from the steps of one of the company's coaches, while attempting to alight; claimed that he fell, and injured his back, and that the slipping was caused by snow and ice upon the steps. A claim agent visited him, with a view to adjusting the claim. He informed the agent that, on January 4, 1917, he had slipped from the car of the defendant at Stillwater, by reason of snow and ice upon the step; that, as a result of the injury, he had difficulty in walking; that his lower limbs were affected; that his left side and shoulder were wrenched. He asked that the company settle with him. The

company did settle with him on account of the alleged injuries.

On the same line, the State was further permitted to show that he made a claim against the Northern Pacific Railway Company for injuries substantially the same as those claimed in this suit; that these injuries occurred at Taylor Falls, Minnesota, on April 24, 1917; that he slipped on a banana peeling, while attempting to alight from one of its trains; that he sprained his ankle and cracked his ribs. After some controversy, the case was settled, and the defendant paid for the claimed injury.

It is conceded—for it could not well be denied—that, for the purpose of showing motive and scheme and purpose to defraud in any particular action called in question, it may be shown that similar claims prior to this were made by the party charged. But it is contended that, in the instant case, there is no proof that the defendant did not suffer the injuries in these other cases for which he claimed satisfaction, and that there is no evidence that he practiced any fraud in securing the settlement, or made any misrepresentations to induce the same. This evidence was only submitted to the jury on the question of the intent to defraud in the particular case. The intent is not always capable of direct and positive proof. It is to be arrived at by just deductions from the acts and facts proven. The falsity of the claim made in this case must be proven, independent of these other transactions. But, the falsity of the claim made being proven, the intent of the party may be shown by his conduct, and to this end, evidence of the character herein complained of is admitted. In all these other transactions, he claimed he was injured. That was the basis of his recovery: that he was injured through the negligence of

1. CRIMINAL LAW: evidence: similar claims as showing motive and scheme to defraud.

2. CRIMINAL LAW: evidence: similar fraudulent claims against railway company as showing intent to defraud.

the defendant in some particular. It was upon these claims that he procured the money in the other suits. All these other transactions were, in their nature, similar to the one here under consideration. It is a remarkable coincidence that, in all these instances, the fall was caused by practically the same negligent act, and the injury that follòwed the fall was practically the same.

Is there no proof, as contended by the defendant, that the other charges were false? Looking into the record, we find that, when this case came up for adjustment, he told Mr. Beardslee that he had never been in-
3. CRIMINAL LAW: jured before. If this be true (we have the evidence: word of the defendant for it), then it follows that these other claims for injury were false. The jury could at least say so from the record made here. Of course, it follows without argument that proof of similar transactions which were in good faith, not bottomed on fraud or deceit, does not prove the scienter involved in a suit where fraud and deceit were charged. The jury could well find from the record made here that the statements made by the defendant to secure the settlement in controversy were not well founded. That might be true, and still every other claim may have been founded upon actual injury, and made in good faith. It would not, if that were so, tend to prove a fraudulent intent in the instant case. The court in its instructions limited this evidence to prove the intent only. But we have the word of the defendant, made at the time this settlement was procured, that he was never injured before,— we have substantive proof from his own lips that he was never injured before. If never injured before, it follows that his claims for injury, made in these other cases, were not made in good faith, and were fraudulent. We have no quarrel with the rule contended for by the defendant, but we do say that, under this record, the jury could well find

that the other claims were not made in good faith, and were not based upon injuries actually sustained. If they were not, it follows that they were fraudulently made.

It is true this representation is not charged in the indictment, or relied upon by the State for conviction, but this statement is substantive proof that the other transactions to which reference has been made were not made in good faith, were fraudulent, and not founded upon actual injury sustained.

It is next contended that the court erred in allowing cross-examination of the defendant, when upon the stand, to exceed the limitation placed by the statute upon the right.

An examination of the record satisfies us that the court did not abuse its discretion in this matter. Though the cross-examination extended, as to some matters, beyond that involved in the direct examination, yet the very matter inquired into related to and had a basis in the direct examination. We find no reversible error here.

It is next contended that the court erred in not sustaining a demurrer to the indictment. An amendment was filed to the indictment, and we may assume that the demurrer was to the indictment as amended. The amendment was simply an amplification of the facts stated in the original indictment, and the two together stated the crime as fully as the law requires. We find no ground for reversing here.

On the whole record, we think defendant's guilt appears beyond a reasonable doubt, and the case ought to be and is —*Affirmed.*

LADD, C. J., PRESTON and STEVENS, JJ., concur.