F. P. WALKER, appellant, v. T. L. SEARS et al., trustees, and CLEAR LAKE SANITARY DISTRICT, appellees.

No. 48428.

(Reported in 61 N.W.2d 729)

DECEMBER 15, 1953.

Thorkel E. Sondrol, Jr., of Clear Lake, for appellant.

E. B. Stillman, of Clear Lake, and Bannister, Carpenter, Ahlers & Cooney, of Des Moines, for appellees.

SMITH, J.—In August 1950 the requisite number of qualified persons petitioned the board of supervisors of Cerro Gordo County to establish Clear Lake Sanitary District under the provisions of chapter 358, Iowa Code, 1950. All parties agree a serious health and sanitation problem existed. Raw sewage was going into the lake resulting in pollution of neighborhood wells and of the lake itself, and endangering public health.

The board of supervisors held a public hearing under said Code chapter on September 7, 1950, to consider objections and suggestions, to establish the boundaries of the proposed district and to call an election for October 19, 1950, "for the purpose of submitting to the qualified voters resident within [its] boundaries the question of organization and establishment of the proposed sanitary district as determined by said board of supervisors." Code section 358.5.

The election was held and the proposal carried overwhelmingly. The board then called another election to be held December 8, 1950, to elect three district trustees, pursuant to Code section 358.9. At this second election defendants Sears and Wolfram and one Thomas Gilruth were chosen to constitute the board of trustees.

This board later prepared and filed plat and schedule, forms of contract and plans and specifications, adopted resolution of necessity (January 29, 1952) and gave notice of a public hearing

to be held March 5, 1952, on objections to the final adoption of said plans, specifications and forms of contract.

On March 3, 1952, trustee Gilruth resigned and on the same day the remaining members filled the resulting vacancy by appointing defendant Duesenberg, but there was no election of trustee at the next following biennial election (Code section 358.9). At the March 5th hearing, the trustees adopted a resolution ordering construction of the sanitary trunk line sewer and sewer treatment plant.

On July 26, 1952, the board of trustees authorized an issue of general obligation bonds in the sum of $609,739.54. Almost a year later (June 2, 1953) it advertised for bids on various parts of the work. On August 13, 1953, contracts were let to successful bidders aggregating $1,429,059.75.

Plaintiff filed his petition herein on September 19, 1953, alleging illegality of procedure in various respects and unconstitutionality of the entire chapter 358. Issue was joined, trial had, and on September 28 the trial court dismissed plaintiff's petition. He appeals.

■ I. It is first urged the District was not legally organized for that the original petition omitted a part of the boundary line description, thereby rendering same unintelligible, whereas subsection 1 of Code section 358.2 requires "an *intelligible* description of the boundaries of the territory to be embraced in such district." (Emphasis supplied.)

We find no indication this point was raised in the court below. It is not mentioned in the trial court's findings of fact or conclusions of law and is not even pleaded by plaintiff. The minutes of the relevant meetings of the board of supervisors and later minutes of the District after it was established were introduced by plaintiff but no discrepancy between the boundaries as described in the original petition and in the subsequent, corrected description was pointed out by plaintiff.

However the point may be implicit in the situation. A careful comparison does reveal there was one omission in the original description, corrected in all proceedings subsequent to the September 7th hearing.

The transcript shows in the cross-examination of one witness by defendant that there was some correction by the supervisors

(at their September hearing) of an error in boundary description which did not change the territory. The witness testified: "It was still the same territory."

We are not furnished with any computation of the extent of area, if any, involved in the correction nor with sufficient data upon which to estimate it ourselves. We cannot say the original description was not "intelligible." There is no showing any different or additional property owners became interested by reason of the correction. Certainly neither plaintiff nor anyone else was prejudiced.

Code sections 358.2, 358.4 and 358.5 clearly contemplate and authorize such corrections. We are convinced there was no occasion for any further hearing to be held on the corrected boundaries, that no jurisdictional question was involved, even had it been raised in the court below, and that the organization of the district was not invalidated.

The cases cited in the briefs are not particularly helpful to either side. They involve situations and statutes not analogous here. The present statute is new and has not heretofore been the subject of judicial scrutiny. The statutory provisions for organization of the district should be liberally construed in order to effectuate the purpose of its enactment. 25 Am. Jur., Health, section 8; 39 C. J. S., Health, section 5d. "In determining the validity of the acts of such boards [of health] and like commissions and their officers, a liberal construction is justified, in view of the public good to be accomplished." Hengehold v. City of Covington (1900) 108 Ky. 752, 756, 57 S.W. 495, 496, citing Inhabitants of Perth Amboy v. Smith, 19 N. J. Law 52.

II. It is next argued all actions taken by the District after January 2, 1952, were rendered illegal by failure to fill the vacancy caused by Mr. Gilruth's March 3rd resignation at the next following biennial election. The validity of defendant Duesenberg's appointment is not questioned. See Code section 358.9. He became a de jure trustee March 3, 1952.

When no one was elected to succeed him at the biennial election that fall he continued to serve as a "holdover." It was not illegal for him to do so. Section 69.1, Iowa Code, 1950.

The doctrine of de facto service in an official position is

too well established to require discussion here. The acts of a de facto official are binding and may not be collaterally attacked as attempted here. Heyland v. Wayne Independent Sch. Dist., 231 Iowa 1310, 1314, 4 N.W.2d 278, quoting Oliver v. City of Jersey City, 63 N. J. L. 634, 641, 44 A. 709, 712, 48 L. R. A. 412, 76 Am. St. Rep. 228. See also Bremer County v. Schroeder, 200 Iowa 1285, 1287, 206 N.W. 303. The assignment is without merit.

█ III. It is argued the defendant District has no power or authority under Code chapter 358 to construct, operate and maintain *lateral* sewer lines, because Code section 358.1 does not expressly mention laterals. No case is cited which holds the power to organize a sanitary district with authority to construct and operate a sewer system would not imply and include the power to install laterals. See People ex rel. Bailey v. Downers Grove Sanitary Dist., 359 Ill. 601, 195 N.E. 465.

However we are not left to mere implication and inference. Code section 358.16 expressly authorizes "all such adjuncts, additions, auxiliary improvements, and works as may be necessary or proper for accomplishment of the purposes intended." And section 358.22 expressly authorizes payment for "constructing, reconstructing, or extending any drains, sewers, or laterals, and other necessary adjuncts thereto."

█ IV. Plaintiff contends the Amendment of 1908 to Article I, section 18, of our State Constitution renders Code chapter 358 unconstitutional. That amendment authorizes legislation permitting owners of lands to organize drainage districts for various purposes including sanitation, with power of special assessment and condemnation. He argues this is "exclusive authority" and that it divests the legislature of power to authorize any other method of "construction, maintenance and operation of sanitary sewers."

The argument could, with equal logic or lack of logic, be extended to divest cities and towns of the power to install sewers and sewage disposal plants. Of course the ready answer is that the cited constitutional amendment does not purport to make the granted legislative power exclusive. It merely says "the general assembly *may* pass laws *permitting*", etc. It does not take away any former power but merely authorizes an additional method of handling the enumerated problems.

The contention cannot be sustained.

V. Lastly it is urged the proposed plan of Clear Lake Sanitary District to issue general obligation bonds is illegal under the statute—that the District is given only the power to pledge avails of a tax levy of not to exceed 5 mills per annum.

This contention is made in the face of a clear, sweeping, statutory provision to the contrary: "* * * any such sanitary district * * * is hereby vested with all of the same powers to issue bonds, including both general obligation and revenue bonds, which municipal corporations * * * now or may hereafter have under the laws of this state. In the application of such laws to this chapter, the words used * * * referring to municipal corporations * * * shall be held to include sanitary districts * * *." Code section 358.21.

Plaintiff's argument is based on section 4, chapter 141, Laws of the Fifty-fourth General Assembly, which amends the above quoted Code section 358.21 by *adding* to it limitations as to the uses to which the proceeds of certain bond issues may be put and then concludes:

"Any sanitary district issuing bonds as authorized in this section is hereby granted authority to pledge the future avails of a tax levy not exceeding five (5) mills per annum to the payment of the principal and interest of such bonds after the same come due, and the power to impose and certify said levy is hereby granted to the trustees * * *." (There is some ambiguity here as to whether the words "this section" refer to section 358.21 of the statute or to section 4 of the amending chapter 4. The question is unimportant here.)

Based on the quoted language plaintiff argues: "It seems clear that a five-mill annual levy will produce fluctuating amounts in future years, depending on future values of property within the district. * * * Since the five-mill levy is required * * * to be an annual affair, the proceeds * * * in some years may not be sufficient to pay the principal and interest of such bonds as they become due."

We recently answered a similar argument in an analogous case. In it the plaintiff argued the language of a similar amendment limited "the levy in future years—when possibly assessed

269 mills might drop

valuations might drop—to five mills." We replied: "This clause does not limit the levy to pay bonds, properly issued under the Act. It provides a factor to be used to determine the right to issue the bonds 'at any one time.' Once issued the bonds are general obligation bonds." Olson v. City of Waterloo, 243 Iowa 953, 956, 54 N.W.2d 458, 460.

That case involved an amendment to Code section 396.22 by chapter 159, Acts 54th G.A., which provided for the issue of bonds for certain purposes "provided that the maximum amount of such outstanding bonds at any one time shall be no more than can be retired within twenty years * * * by a levy not to exceed five mills * * *."

Code section 76.3 prescribes the interpretation to be applied in such case: "Tax limitations in any law for the issuance of bonds shall be based on the latest equalized actual valuation then existing *and shall only restrict the amount of bonds which may be issued.*" (Emphasis supplied.) In other words the tax limitation is not upon the millage of levy for retirement of the bonds but is upon the amount of bonds that may be issued at a given time.

The amendment does not limit the power given the District by Code chapter 358 to issue general obligation bonds. As said in the Olson opinion as to the amendment discussed there: "The section is a grant of authority to issue unlimited levy bonds with a limitation on the grant."

It should be pointed out the District has access to other sources of revenue, available for various purposes: Power to levy annually a tax not exceeding two mills for corporate purposes, Code section 358.18; right to charge for utilities and services rendered, section 358.20; and right to levy special assessments for benefits to abutting and adjacent property owners, section 358.22.

We have considered every contention urged by plaintiff on appeal and find no error. It follows the decision of the trial court must be affirmed. It is so ordered.—Affirmed.

All JUSTICES concur.