STATE OF IOWA, appellee, v. CHRISS M. OLSON, appellant.

No. 49158.

(Reported in 86 N.W.2d 214)

538

540

NOVEMBER 12, 1957.

Opinion Modified and Rehearing Denied
January 21, 1958.

Harris & Harris, of Jefferson, and Page & Nash, of Denison, for appellant.

Norman A. Erbe, Attorney General, Don C. Swanson and Hugh V. Faulkner, Assistant Attorneys General, for appellee.

GARFIELD, J.—Defendant was a member of the Crawford County Board of Supervisors from 1937 until March 1954, when he resigned following a heart attack. However he did not serve on the board from the fall of 1942 until December 1943 while a member of the armed forces. The three board members also acted as trustees of the county drainage districts.

On July 16, 1954, defendant was indicted for the crime of conspiracy with Leonard J. Hassett and L. J. Gibson, in violation of section 719.1, Code, 1950. Hassett and Gibson were county employees. Gibson died in January 1953. The indictment charges defendant "Did on or about the month of October, 1951, with fraudulent intent willingly and unlawfully conspire, combine and confederate with Leonard J. Hassett and L. J. Gibson to injure the property and funds owned by Boyer River Drainage District No. 1 of Crawford County, Iowa, and with a fraudulent intent to injure the rights of members of said drainage district * * *, having an interest in said property and said funds of said drainage district, contrary to and in violation of section 719.1, Code of Iowa, 1950, * * * ."

On June 11, 1956, defendant pleaded not guilty. Place of trial was changed to Greene County where trial was had in September. During the nearly 23 months between return of the indictment and entry of the plea there were filed and ruled upon different motions to set aside the indictment, motions to require bills of particulars and to strike all or parts of the bills that were furnished, and an amended demurrer to the indictment. Testimony was taken for four days upon submission of the first

motion to set aside the indictment, apparently in an attempt to show bias and hostility toward defendant by the assistant county attorney and some of the grand jurors who returned the indictment. More than half of defendant's brief is devoted to alleged errors that arose before the main trial commenced.

Briefly the State contends defendant conspired with Hassett and Gibson to sell illegally to Boyer River Drainage District No. 1 a large quantity of jackstones at an excessive price for defendant's personal enrichment. A jackstone is made of reinforced concrete, in three parts, each about five inches square and five to six feet long, fastened together near one end to form a tripod. They are installed in watercourses to retard erosion, apparently along the banks where the current is swift.

Large quantities of jackstones were made by Gibson under the name B & H Materials Co., purchased by the supervisors and paid for with drainage warrants. Defendant furnished Gibson substantial sums which were used in the business and received substantial amounts from proceeds of warrants issued in payment for the jackstones. The State claims defendant was a partner in this illegal enterprise. Defendant testifies the sums he advanced Gibson were merely loans made in a desire to assist him and the amounts defendant received were in payment of the loans.

I. Error is assigned in overruling defendant's motion to set aside the indictment because it is said R. E. Franck, assistant county attorney, was an improper person present before the grand jury which returned the indictment. Code section 776.1, subsection 6 (all references are to the Code of 1954 unless otherwise indicated), gives as a ground for setting aside an indictment that someone other than the grand jurors was present before it during the investigation "except as required or permitted by law."

On the county attorney's application the district court made an order appointing Mr. Franck assistant county attorney with authority to appear before the grand jury for the purpose of assisting in such investigation as the state attorney general and the county attorney may deem necessary and with authority to assist in such trial work as in the attorney general's judgment may be necessary. Later that same day the court, apparently on

its own motion, made an order expunging the previous one as premature in that no one was then charged with a felony. The county attorney then filed a second application reciting that John Doe, Richard Roe and certain other persons had been charged with conspiracy to defraud Crawford County in the court of a named justice of the peace and assistance was needed to properly present such matters to the grand jury and to try such cases as may result from the investigation. The court made a second order appointing Mr. Franck assistant county attorney with authority like that conferred by the first order, after reciting that certain persons had been charged with a felony.

Defendant argues Code section 341.7 conferred upon the court the only power it had to appoint an assistant to the county attorney. The section provides: "The county attorney may with the approval of a judge of the district court procure such assistants in *the trial* of a person charged with felony as he shall deem necessary * * *." (Emphasis added.) It is said a grand jury investigation is not a trial and therefore the court was without power to authorize Mr. Franck to appear before the grand jury.

State v. Tyler, 122 Iowa 125, 127–130, 97 N.W. 983 (Ladd, J.), a conviction of first-degree murder, is conclusive against this claim of error. It holds the district court has inherent power, independent of what is now section 341.7, to appoint a reputable attorney to appear before the grand jury to assist the county attorney in an investigation. State v. Kovolosky, 92 Iowa 498, 501, 61 N.W. 223, is an earlier decision which also recognizes the power of the district court to appoint an assistant to the county attorney who, like that officer, may appear before the grand jury.

State v. Coleman, 226 Iowa 968, 972, 285 N.W. 269, disposes of a contention like that urged by defendant here by saying since the county attorney may appear before the grand jury an attorney appointed as his assistant by the court, under what is now section 341.7, may also do so.

State v. Jones, 306 Mo. 437, 268 S.W. 83, 85, recognizes the inherent power of the court, independent of statute, to ap-

point a special prosecuting attorney when the regular prosecutor is disqualified.

We have not overlooked, but do not discuss, defendant's attempt to distinguish the Tyler and Coleman cases, supra. It will be impossible within the acceptable limits of an opinion to discuss all the many contentions able counsel have advanced.

Decisions which consider the effect of presence in the grand jury room of assistants to the prosecuting attorney are summarized in annotation 4 A. L. R.2d 392, 402, 403, 409, 410, and note 33 L. R. A., N. S., 568, 569–572.

■ II. There is no merit to defendant's claim the indictment should have been set aside on the ground Mr. Franck failed to qualify as an assistant to the county attorney by posting bond and taking an oath of office and was therefore improperly before the grand jury. It is argued Franck was a public officer required by Code section 64.2 to give bond.

State v. Tyler, supra, 122 Iowa 125, 129, 97 N.W. 983, 985, approves the appearance before the grand jury of an assistant county attorney appointed by the court although he takes no oath of office other than his oath as a practicing attorney and furnishes no bond. The opinion states: "Attorneys are officers of the court, and the oath taken by them when admitted to practice is quite as full and complete as that of the county attorney. True, they execute no bond, but when acting as special counsel for the state their conduct is subject to review, and, should it be unbecoming as an officer of the court, a penalty may be imposed quite as severe as that nominated in the bond. Raymond v. People, 2 Colo. App. 329 (30 Pac. Rep. 504). The presence of such an officer before the grand jury under the direction of the court differs radically from that of a stranger, who is under no such restraint."

■ Further, we are not prepared to hold that Franck's failure to take an oath of office or furnish bond, if it be assumed they were required, may be urged as a basis for setting aside the indictment. He was at least a de facto officer the regularity of whose acts may not be questioned on this ground in this collateral proceeding. State v. Bates, 23 Iowa 96, 98, 99; State ex rel. Hartnett v. Powell, 101 Iowa 382, 386, 70 N.W. 592; Bremer County v. Schroeder, 200 Iowa 1285, 1287,

206 N.W. 303; State v. Central States Elec. Co., 238 Iowa 801, 818, 28 N.W.2d 457, 466; Walker v. Sears, 245 Iowa 262, 266, 267, 61 N.W.2d 729, 731.

III. There is likewise no merit to defendant's contention the indictment should have been set aside on the ground Assistant County Attorney Franck was so antagonistic toward defendant as to disqualify him from appearing before the grand jury.

When Mr. Franck was appointed assistant county attorney he was a director and president of the Crawford County Taxpayers League, formed about two years earlier for the purpose of obtaining information regarding public expenditures and like objects. Upon his appointment he resigned as president of the league but not as director. He had held these offices less than four months. The league had paid some money to an attorney and one or two investigators and some of those instrumental in it, including Franck, had conferred with the state attorney general and one or two of his assistants regarding their information and suspicions. The league was evidently suspicious of some of the conduct of the county supervisors. Mr. Franck's uncle by marriage and law partner was instrumental in forming the league.

Franck was a candidate for county attorney in 1952 on a platform to investigate expenditure of county funds. He believed from evidence he had there were substantial irregularities and that defendant among others was involved. Defendant opposed Franck in the campaign. The election resulted in a tie which was broken by one of the supervisors (not shown to have been defendant) drawing the name of Franck's opponent from a hat.

The above is a sufficient indication of the evidence upon which defendant bases his contention Franck was so antagonistic toward him as to be disqualified to appear before the grand jury. The trial court listened to the testimony and found it insufficient to substantiate the charge. This finding is entitled *at least* to some weight. There is no showing Franck said or did anything improper before the grand jury. Defendant examined as witnesses six of the seven grand jurors. At least

four of them say Franck expressed no opinion as to defendant's guilt or innocence. No one testifies to the contrary. There is no evidence Franck received any pay from the taxpayers league or other private source.

State v. Rocker, 130 Iowa 239, 106 N.W. 645, and State v. Jones, supra, 306 Mo. 437, 268 S.W. 83, cited by defendant on this point, are not comparable on the facts. In the former the county attorney was Rocker's attorney in the very matter under investigation and was therefore held not to be a person required or permitted by law to go before the grand jury. In State v. Jones the prosecutor filed an information in a matter in which he had been personally involved and was personally and financially interested in the prosecution.

■ IV. The district court was right in refusing to set aside the indictment on the ground two of the seven grand jurors were antagonistic to defendant and the grand jury was therefore allegedly not impartial.

One grand juror became a member of the taxpayers league above referred to at its inception in 1952 and paid his membership fee of $10. He did not pay another $10 to remain a member, never attended a meeting and was never an officer. The foreman of the grand jury owned land in the drainage district referred to in the indictment. He was one of twenty or more landowners who had complained to the supervisors they were being excessively taxed, partly for the purchase of jackstones. He had also gone to Des Moines with some others from the drainage district to talk to an assistant attorney general regarding their complaints.

Code section 770.5 provides: "A challenge to an individual grand juror may be made before the grand jury is sworn * * *. 3. By the defendant only because: * * * b. He has formed or expressed such an opinion as to the guilt or innocence of the prisoner as would prevent him from rendering a true verdict upon the evidence submitted on the trial."

■ This provision did not warrant setting aside the indictment. First, it does not appear either grand juror above referred to had formed or expressed such an opinion as the statute contemplates. Both testify in denial of the charge and there is no contrary testimony. Second, defendant did not chal-

lenge any individual grand juror before the grand jury was sworn as section 770.5 permits. Third, a grand juror's "opinion" is a ground merely of a challenge to a grand juror, if timely made, not for setting aside an indictment under sections 776.1, 773.6. State v. Baughman, 111 Iowa 71, 72–74, 82 N.W. 452, and citations. Nor is it claimed any of the statutory grounds for setting aside an indictment have been shown.

Annotation 88 A. L. R. 899, 900, states: "In the absence of statutes permitting it, the general rule is that the bias or prejudice of a member of the grand jury against a defendant is not ground for an attack on the indictment. Many cases are to this effect, usually proceeding on the theory that a grand jury is an accusatory and not a judicial body, and has the right and obligation to act on its own information, however acquired."

State v. Russell, 90 Iowa 569, 574, 58 N.W. 915, 28 L. R. A. 195, upholds refusal to set aside an indictment for adultery on the ground a grand juror was a brother of defendant's aggrieved spouse.

█ We have repeatedly held an indictment may be set aside only on grounds enumerated in the statutes, sections 776.1, 773.6. State v. Boucher, 237 Iowa 772, 777, 778, 23 N.W.2d 851, 853, 854, and citations; State v. Lamb, 239 Iowa 176, 179, 180, 30 N.W.2d 734, 736. See also 42 C. J. S., Indictments and Informations, section 202; 27 Am. Jur., Indictments and Informations, section 138.

Defendant argues the district court had inherent power to set aside the indictment on a ground not specified in the statutes and should have exercised it here. We need not determine whether such power exists in an exceptional case in order to prevent oppression or violation of constitutional rights. If it be assumed the power exists, a proper case for its exercise has not been shown here. See in this connection State v. Manley, 197 Iowa 46, 48, 49, 196 N.W. 724; State v. Baughman, supra, 111 Iowa 71, 73, 82 N.W. 452.

█ V. Code section 719.1, which the indictment (quoted at the outset of this opinion) asserts was violated, provides: "If any two or more persons conspire or confederate together with the fraudulent or malicious intent wrongfully to injure the person, character, business, property, or rights in property of

another, or to do any illegal act injurious to the public trade, health, morals, or police, or to the administration of public justice, or to commit any felony, they are guilty of a conspiracy, * * *."

It is argued the indictment is insufficient since, it is said, a drainage district is not a "person" to which the statutory word "another" refers. It is true we have said a drainage district is not a corporation. It cannot sue or be sued. We have referred to it as a segregated area of land, set out by legal proceedings, which is subject to assessment for certain drainage improvements within the area. Its affairs are managed by the board of supervisors in a representative capacity. Board of Supervisors of Worth County v. District Court, 209 Iowa 1030, 1033, 229 N.W. 711, 712; Mitchell County v. Odden, 219 Iowa 793, 801, 259 N.W. 774; First National Bank v. Webster County, 204 Iowa 720, 722, 216 N.W. 8.

We think the indictment is not insufficient upon the ground urged even though a drainage district is not a legal entity. It has been held the character of a statute in which "another" is used controls the interpretation to be given the word. It would seem the legislature was as much concerned with protecting the property and funds of a drainage district as of a corporation or individual. No good reason is apparent why a conspiracy to injure the property and funds of a drainage district should not fall within the terms of the statute. Somewhat similar laws have been held to be violated even though no particular person was to be defrauded. A conspiracy statute is usually held to cover an intended wrong against a class of persons or the general public.

In support of the views just stated see Archer v. State, 145 Md. 128, 125 A. 744 (conspiracy to obtain moneys and properties of the customers of a certain brokerage firm); Mays v. State, 182 Tenn. 316, 186 S.W.2d 334 ("another" includes governmental agencies); People v. Quesse, 310 Ill. 467, 142 N.E. 187, 188; Moore v. Commonwealth, 92 Ky. 630, 18 S.W. 833 (decision based in part on statutory definition of person); 15 C. J. S., Conspiracy, section 84; 11 Am. Jur., Conspiracy, section 33.

We think too the indictment, in the respect complained of, is aided by the charge the conspiracy was with a fraudulent intent to injure the rights of members of the drainage district having an interest in its property and funds. The word "members" evidently refers to landowners, who are of course persons, and the class to be defrauded is sufficiently described.

As we have indicated we find no merit in defendant's contention a drainage district can have no property or funds. The warrants issued in this case were all paid according to their terms from funds of the particular drainage district. The only method provided by statute for obtaining these funds is by assessment against lands in the district. When these assessments were paid, clearly the district had funds. Prior thereto the assessments were liens against the lands.

Landowners in the district have an interest in its funds at least to the extent that large disbursements therefrom accelerate the levy of another assessment and increase the amount thereof. Certainly the landowners are interested in the number and amount of assessments they are compelled to pay and in the legitimacy of disbursements from the fund paid in by them.

VI. We hold the indictment, quoted at the outset, adequately charges the crime of conspiracy. The indictment closely follows the one upheld upon a similar attack in State v. Blackledge, 216 Iowa 199, 243 N.W. 534. The indictment here and that in the cited case each contain a so-called additional count which states it is added "with no intent or purpose * * * of charging any offense or crime other than the offense charged in Count I above, but fully [solely] to meet the testimony, [further] alleges: * * *." The statement of some alleged overt acts follows. Defendant refers to this added count as a self-imposed bill of particulars. The State here later furnished other bills of particulars.

This indictment may be upheld upon considerations like those expressed in the Blackledge opinion, supra, which reviews our earlier decisions upon sufficiency of indictments for conspiracy. However, as the opinion observes, the so-called short form indictment act (chapter 266, Laws Forty-third General Assembly, 1929, now embodied in Code chapter 773) was enacted after the Blackledge indictment was returned. And every

Iowa case defendant cites on this point arose before the statutes authorized the short form of indictment.

To uphold this indictment against the attack made upon it we need go only to our present statutes which defendant's brief ignores. Section 773.3 provides an indictment is valid if it charges the offense by using the name given it by statute or by stating so much of its definition as is sufficient to give the court and accused notice of what offense is intended to be charged. Section 773.4 states: "No indictment which charges the offense in accordance with * * * 773.3 shall be held insufficient on the ground that it fails to inform the defendant of the particulars of the offense."

Section 773.5 provides that when an indictment charges an offense in accordance with 773.3 but it, together with the minutes of the evidence filed therewith, fails to inform defendant of the particulars of the offense sufficiently to enable him to prepare his defense or to give him such information as he is entitled to under the State Constitution, a bill of particulars containing such information as may be necessary for these purposes shall, at his request, be furnished. As previously stated, different bills of particulars were furnished here. Section 773.10 states "An indictment need contain no allegation of the means by which an offense was committed, unless such allegation is necessary to charge an offense under section 773.3." Section 773.34 contains permissible forms of indictments for various crimes including conspiracy.

 The short form indictment law has withstood constitutional assaults because of the provision which entitles an accused to a bill of particulars under the circumstances above referred to. State v. Keturokis, 224 Iowa 491, 276 N.W. 600. Recent decisions which uphold indictments or informations under terms of the law include State v. Di Paglia, 247 Iowa 79, 83, 71 N.W.2d 601, 603, 49 A.L.R.2d 1223, and citations; State v. Bostwick, 244 Iowa 584, 588, 57 N.W.2d 217, 219; State v. Lockhart, 241 Iowa 638, 39 N.W.2d 589.

 VII. There is no merit to the contention the indictment should have been dismissed because it does not charge defendant conspired with Hassett and Gibson "wrongfully."

Section 719.1, set out in Division V hereof, uses the term "wrongfully." The indictment alleges defendant did "with fraudulent intent * * * unlawfully conspire * * * contrary to and in violation of section 719.1 * * *." The indictment thus uses the word "unlawfully" in place of "wrongfully", found in the statute. However, the charge that section 719.1 was violated is to be considered in determining the sufficiency of the indictment. Code section 773.3.

We think the indictment uses "terms of substantially the same meaning" as section 719.1 and is therefore not invalid on the ground urged. Section 773.3. And see 773.14 which provides an indictment need not allege the offense was committed " 'unlawfully' * * * nor need it use any phrase of like kind otherwise to characterize the offense * * *."

VIII. It is contended the prosecution was barred by the statute of limitations. The statutory period is three years. Section 752.3. Defendant argues the statute commences to run from the formation of the original conspiracy. It is said the crime is then complete. The original conspiracy was formed more than three years before the indictment was found. The State maintains and the trial court held the period of limitations does not commence to run so long as the conspiracy continues in existence by the commission of overt acts in furtherance thereof. This presents a question we have not before decided.

This matter is considered in annotation 97 A. L. R. 137. After stating the opposing views for which the parties here contend it proceeds: "* * * it has been held, in a large majority of the cases passing upon the applicability of the Statute of Limitations to a prosecution for conspiracy, that, although the conspiracy was formed prior to the statutory period of limitation, the prosecution is not barred where an overt act was committed in furtherance of the conspiracy within that period."

22 C. J. S., Criminal Law, section 227c, page 359, states: "The weight of authority, however, supports the view that the statute begins to run from the date of the commission of the last overt act in furtherance of the object of the conspiracy, and not from the time the conspiracy was entered into * * *."

Decisions which uphold the State's contention on this point include: Brown v. Elliott, 225 U. S. 392, 401, 32 S. Ct. 812, 56 L.Ed. 1136, 1140; Fiswick v. United States, 329 U. S. 211, 216, 67 S. Ct. 224, 91 L.Ed. 196, 200; Cooke v. People, 231 Ill. 9, 82 N.E. 863, 867, and citation (conspiracy to defraud the county by padding pay rolls); Archer v. State, supra, 145 Md. 128, 125 A. 744, 751; Scarlett v. State, 201 Md. 310, 93 A.2d 753, 755, 756, certiorari denied, 345 U. S. 955, 73 S. Ct. 937, 97 L.Ed. 1377; Re William F. Doyle, 257 N. Y. 244, 177 N.E. 489, 493, 87 A.L.R. 418, 424.

A conspiracy frequently does not come into full operation until a considerable time after the original combination is formed. To adopt defendant's contention would mean that criminal conspirators would be immune from prosecution if they waited the statutory period before carrying the conspiracy into effect. It would seem such an unfortunate result should be avoided if there is sound basis for so doing. Several courts which do not subscribe to the view defendant advances hold that conspiracy is a continuing offense so the statute of limitations is tolled as to the original conspiracy each time an overt act is committed in furtherance of it. See citations page 147 of annotation 97 A. L. R.; 11 Am. Jur., Conspiracy, section 25.

We are disposed to follow what appears to be the view of a definite majority of the courts, which the trial court accepted, that the statute of limitations does not commence to run so long as a conspiracy continues to exist by the commission of overt acts in furtherance of it. This appeals to us not only as the majority rule but the better one.

IX. Error is assigned in overruling defendant's third motion to set aside the indictment mainly on the ground the State failed to furnish particulars of the alleged crime. Defendant also demurred to the indictment on this ground and others which, insofar as they merit discussion, are hereinbefore disposed of.

The trial court required the State to furnish a bill of particulars and a supplemental bill. These were furnished although defendant contended they were insufficient and moved to dismiss the indictment on this ground. Parts of the bills were stricken as insufficient. The State then furnished a second sup-

plemental bill after it had stated defendant had been given all the grounds on which the indictment was founded. The court refused to strike this second supplemental bill, overruled the last motion to set aside the indictment and the demurrer thereto.

Division VI hereof refers to some of the provisions of section 773.5 regarding furnishing bills of particulars. The section also states supplemental bills may be furnished voluntarily. Section 773.6 gives as grounds for setting aside an indictment, in addition to those set out in 776.1, that it appears from the bill of particulars the statements therein do not constitute the offense charged in the indictment or that defendant did not commit that offense or that a prosecution therefor is barred by limitations. However, 773.6 provides the indictment is not to be dismissed on any of these grounds if another bill is furnished which supplies the required particulars. In connection with the above see State v. Boucher, supra, 237 Iowa 772, 23 N.W.2d 851.

Defendant's third motion to dismiss the indictment is not based on any ground set out in 773.6. It is not claimed any ground specified in 776.1 exists. As Division IV hereof states, these statutory grounds are exclusive.

The demurrer to the indictment is based in part upon claimed deficiencies in the bills of particulars. Grounds of demurrer must appear on the face of the indictment. Section 777.2; State v. Di Paglia, supra, 247 Iowa 79, 84, 71 N.W.2d 601, 603, 604, and citations.

X. The claimed errors above considered arose prior to the main trial. The remaining ones arose after trial commenced.

Robert M. Gibson, son of the alleged coconspirator L. J. Gibson who died before the trial, was probably the State's most important witness. Over defendant's objection he testified he had a conversation with defendant in which Jack DeGard, Denison newspaper editor, was mentioned. When asked what was said, the witness answered, "Mr. Olson said there was people that could be hired to take care of people like him." At the State's request the answer was repeated. Defendant did not object to the question nor move to strike the answer nor for a mistrial but the court on its own motion immediately struck

all questions and answers relative to a conversation concerning Jack DeGard and directed the jury to disregard them as having nothing to do with the case.

It is clear the court committed no error in connection with the above testimony. But defendant contends there was such misconduct of the State's attorney in calling for the quoted answer as requires a reversal. It is not clear what the State was attempting to prove in offering this evidence nor is its significance apparent. It may be editor DeGard, through his newspaper columns, had been critical of defendant's conduct in the matters in issue and thereby incurred defendant's displeasure, but the testimony given was stricken before this added showing could be made.

In any event we are not persuaded defendant is entitled to a reversal on the ground asserted. The general rule is that the distinct, prompt withdrawal of evidence erroneously admitted cures any error in admitting it except in extreme instances where it is manifest the prejudicial effect of the evidence on the jury remained and influenced the verdict despite its exclusion. State v. Miskell, 247 Iowa 678, 690, 73 N.W.2d 36, 43, and citations. See also State v. Bolds, 244 Iowa 278, 281, 282, 55 N.W.2d 534, 535; State v. Canalle, 206 Iowa 1169, 1173, 221 N.W. 847. We think this is not such an extreme instance as calls for interference by us.

We have frequently held misconduct of the prosecuting attorney does not require a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial. State v. Harless, 249 Iowa 530, 536, 86 N.W.2d 210, 213, and citations; State v. Miskell, supra; State v. Warren, 242 Iowa 1176, 1189, 47 N.W.2d 221, 228, and citations; State v. Caringello, 227 Iowa 305, 309, 288 N.W. 80.

We have also pointed out many times that the trial court is in much better position than we are to judge the prejudicial effect of claimed misconduct of counsel and it has considerable discretion in passing on such a matter. See precedents last above, also State v. Bolds, supra; State v. Franklin, 242 Iowa 726, 737, 738, 46 N.W.2d 710, 716, 717, and citations. This grievance of defendant was presented to the experienced court that presided at the trial and it necessarily found defend-

ant was accorded a fair trial notwithstanding his claim of misconduct of counsel. After giving this finding the weight it deserves we are not warranted in holding the finding was a manifest abuse of discretion.

XI. We consider now defendant's other claim of misconduct of the State's attorney based on a statement in final argument to the jury. In January 1954 defendant advanced $700 and alleged coconspirator Hassett $300, in currency, to Robert Gibson who testifies the money was to pay their share of income tax against B & H Materials Co. and that most of the tax arose from sales of jackstones. Defendant and Hassett testify the currency was handed Gibson as a loan to his mother, L. J. Gibson's widow. Defendant tried to show by Gibson that the State's attorney had suggested he procure this $1000 from defendant and Hassett. Gibson, however, insisted the attorney knew nothing of it until a meeting between them the month before the trial.

In his jury argument defendant's counsel charged at least twice that someone put Gibson up to laying a trap for Olson by obtaining this money. In his final argument the State's attorney said there was no testimony to support opposing counsel's charge but by inference he was accused and he (State's attorney) personally knew Gibson was telling the truth when he testified the attorney knew nothing of the matter until the previous month. Defendant claims this was such misconduct as calls for a reversal. We cannot agree.

Defendant made no objection to the argument prior to the filing of his motion for new trial nearly 60 days after return of the verdict. Evidently his counsel was not much disturbed about the statement when made. The present claim may properly be denied as not timely presented to the trial court. State v. Rutledge, 243 Iowa 179, 199, 47 N.W.2d 251, 263, and citations; Hackaday v. Brackelsburg, 248 Iowa 1346, 1352, 1353, 85 N.W.2d 514, 518, and citations.

Further, the argument for defendant furnished at least some justification for the statement complained of. The trial court considered this grievance in passing on the motion for new trial and its denial of relief was not such a clear abuse of

**556**

discretion as calls for interference by us. See citations in the last preceding division.

XII. It seems desirable to consider now defendant's claim the evidence of guilt is insufficient. In this connection we view the evidence in the light most favorable to the State. The verdict is binding upon us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Harless, 249 Iowa 530, 531, 532, 86 N.W.2d 210, 211, and citations.

As stated at the outset the State contends defendant conspired with Hassett and L. J. Gibson, both county employees, to sell illegally to Boyer River Drainage District No. 1 large quantities of jackstones at excessive prices for defendant's enrichment. Gibson designed originally and manufactured the jackstones under the name B & H Materials Co. There is evidence "B & H" stood for "Buck"—Gibson—and "Hon" for Hassett. Gibson told his son if he was ever asked, to say the letters stood for Bob, the son, and Helen, the son's wife. There is substantial evidence defendant was a partner in the business.

In the spring of 1947 defendant advanced about $200 to an attorney to secure a patent on the jackstone Gibson designed. In the fall of 1948 defendant advanced sums totaling over $2200 for materials and equipment for a building and car of cement to enable Gibson to manufacture jackstones. In 1949 a state auditor wrote Gibson he could not sell jackstones to the county while employed by it. At Gibson's request his son then became dummy owner of the business, and sales of jackstones to the supervisors continued.

October 8, 1951, Gibson, in the name of B & H Materials, filed a claim for $3549.60 with the county auditor for 240 jackstones furnished Boyer (River Drainage) District No. 1. On the same day he filed a claim for $3697.50 for 250 jackstones furnished the county. Both claims were forthwith approved by the supervisors (defendant was then chairman) and warrants were issued for their payment, the one on Boyer District No. 1, the other on the road maintenance fund. Gibson instructed his son, the witness Robert, to take these two warrants, go to the bank at Manilla with defendant and follow his instructions as to what to do with the money. October 9 defendant took Robert

to Manilla. Along the way defendant gave him a blank deposit slip and told him how to fill it out.

Under defendant's instruction Robert listed the two warrants from the total of which there was deducted $7245 cash, leaving only $2.10 to be deposited to B & H Materials account. A paper attached to the deposit slip, written by Robert under defendant's direction, contains this: "L. J. Gibson $2340; Chriss Olson $3500; Cash $1405; (Total) 7245." Olson did not go in the bank although he had different accounts there. After they left Manilla, Robert, as instructed, gave defendant the currency obtained at the bank.

The above transaction, at least so far as it relates to Boyer District No. 1, is one of the overt acts on which the State relies. Defendant complains of the receipt in evidence of the above claim against the county and warrant in payment of it. We have no doubt these exhibits were rightly admitted as inseparable parts of the transaction involving the drainage district. The State was entitled to show the entire transaction, not just part of it. The claim against the drainage district, the warrant on its funds and the deposit slip were received without objection. The claim against the county and its warrant were explanatory of the deposit slip.

In 1951 or 1952 defendant took Robert Gibson to Omaha in an attempt to sell jackstones made by B & H Materials. Robert did not know the engineer they went to see.

In January 1954 Robert told defendant and Hassett there was a considerable income tax against B & H Materials, largely from sales of jackstones, and that he (Robert) would assume his father's part of the tax but wanted them to assume their part. Defendant and Hassett assured Robert several times they would reimburse him for two thirds of the tax. Their advancement of currency totaling $1000, referred to in the preceding division, was part payment on this account. Defendant gave Robert $50 to hire a lawyer to represent him at a tax hearing and told him who to get. Defendant also gave the witness a typed list, taken from county records, of warrants to B & H Materials, showing dates and amounts. Defendant's contention this list was inadmissible in evidence is clearly without merit.

Near the outset of the grand jury investigation that led to this indictment defendant and Hassett warned Robert to keep quiet and tell the grand jury nothing about them or he (Robert), as well as defendant, might be prosecuted for conspiracy. These talks occurred several times, usually in meetings arranged by Hassett on a side road. Later, after Robert gave his testimony to the grand jury, defendant told him his attorney said it was damaging. At about the commencement of the investigation Robert, at defendant's request, gave him a box containing papers and records of B & H Materials. Defendant told the witness he wanted to go through the box and remove anything that contained his (defendant's) writing. Later defendant returned the box.

On the day or within a day or two of the issuance of sixteen of the warrants to B & H Materials, L. J. Gibson or Robert, at his father's direction, issued sixteen B & H checks payable to cash. The checks total $16,980 and are dated over a period from February 1949, to May 1952. The checks were in the box delivered to defendant.

We think there is substantial evidence, much of it circumstantial, that the prices received for the jackstones were excessive.

The above is a sufficient indication of the evidence. It is true defendant and Hassett deny much of it. As stated at the outset hereof defendant claims the advancements made by him to the Gibsons were loans and the money he received was in payment thereof. But there is substantial evidence that is quite inconsistent with this claim. To say the least, loans of large amounts are not ordinarily made by experienced businessmen by the transfer of currency for which no evidence of indebtedness is taken. Nor are loans paid in like manner.

██ ██ In considering the sufficiency of the evidence it is necessary to refer only to that which tends to support the verdict. State v. Poffenbarger, 247 Iowa 552, 554, 74 N.W.2d 585, 586, and citations. We have no doubt it is sufficient. While there is no direct evidence of the alleged conspiracy there is much circumstantial evidence and testimony in the nature of admissions which clearly point to its existence. Of course from the nature of the charge a conspiracy may, and frequently

must, be proven in this manner. See Weber v. Paul, 241 Iowa 121, 126, 127, 40 N.W.2d 8, 11, 12, and citations; State v. Critelli, 237 Iowa 1271, 1282, 24 N.W.2d 113, 119 and citations; State v. Davis, 230 Iowa 309, 316, 297 N.W. 274, 277, and citations; Hoeppel v. United States, 66 App. D. C. 71, 85 F.2d 237, 242, and citation.

Evidence of guilt here seems considerably stronger than in State v. Lowenberg, 216 Iowa 222, 226, 243 N.W. 538, and State v. Blackledge, supra, 216 Iowa 199, 243 N.W. 534, which uphold convictions upon similar charges.

XIII. Error is assigned in the admission of one piece of oral testimony and several documentary exhibits other than those the preceding division holds were properly received. In considering these questions we observe the trial court has considerable discretion in ruling on the admissibility of circumstantial evidence. A wide latitude is generally allowed in admitting it where direct testimony is lacking. Circumstantial evidence is admissible where it leads to a reasonable inference, not a mere suspicion, of the fact sought to be proven.

See in support of these views State v. Sedig, 235 Iowa 609, 616, 617, 16 N.W.2d 247, 251, and citations; State v. Marcus, 240 Iowa 116, 120, 34 N.W.2d 179, 181; City of Des Moines v. Rosenberg, 243 Iowa 262, 272, 51 N.W.2d 450, 455, 456; 15 C. J. S., Conspiracy, section 92b, pages 1141-4 ("The prosecutor has the right to show the whole history of the conspiracy from the commencement to its conclusion. It is no objection that the evidence covers a great many transactions and extends over a long period of time * * *.").

Regarding overt acts, 15 C. J. S., Conspiracy, section 92d, page 1145, states they may "be shown since from them an inference may be drawn as to the existence and object of the conspiracy. * * * Such acts, to furnish proof of the conspiracy, *need not themselves be substantive offenses.* Evidence of * * * overt acts is also admissible for the purpose of showing the time up to which the conspiracy continued." (Emphasis added.)

Hoeppel v. United States, 66 App. D. C. 71, 85 F.2d 237, 242, says: "An overt act, as well as the circumstances under which it is committed, may always be considered in connection

560

with other evidence * * * in determining whether or not a conspiracy existed. [Citations] Nor is it essential that an overt act should be a substantive offense in order to furnish proof of the conspiracy." See also State v. Madden, 170 Iowa 230, 235, 148 N.W. 995; State v. Soper, 118 Iowa 1, 6, 7, 91 N.W. 774.

In Patterson v. State, 96 Ohio St. 90, 117 N.E. 169, L. R. A. 1918A 583, defendant was convicted of larceny of an automobile on evidence that he conspired with another to steal automobiles. In a well-considered opinion it was held evidence was admissible of the taking of an automobile other than the one referred to in the indictment although defendant had been tried and acquitted of larceny of that automobile. And see in this connection State v. Thompson, 241 Iowa 16, 22, 39 N.W.2d 637, 641.

 Lauer Ward testified over defendant's objection as irrelevant and immaterial that the cost of manufacturing jackstones in Lincoln, Nebraska, in 1946 to 1948 was about $6 each. He later said without objection such cost increased at least 15% in the fall of 1951. Ward was president and manager of a company that manufactured jackstones shipped into Crawford County in 1947 and 1948. The jackstones shipped in 1948 were for installation in Boyer River Drainage District No. 2 under a contract between the district, acting through the supervisors, and one Miller, who sublet the installation to Hassett who in turn engaged L. J. Gibson to do the work. Invoices of these jackstones were received in evidence also over objection as irrelevant and immaterial.

Although the above evidence is somewhat remote we are not persuaded its admission was error, at least as bearing on the cost of manufacturing jackstones during the period involved here. In any event it could hardly have been prejudicial to defendant since it was shown by oral testimony without objection that the jackstones shipped into the county were invoiced by Ward's company at delivered prices ranging from $6.25 to $8.50 each. Bohnsack v. Driftmier, 243 Iowa 383, 396, 52 N.W.2d 79, 86, and citations.

 Over defendant's objection of irrelevant and immaterial, claims of Miller and Hassett and warrants in payment thereof for jackstones and installation thereof in Boyer District

No. 2 were received in evidence. The warrants to Miller were endorsed to Hassett (alleged to have been a coconspirator). Deposit slips showing the deposit of the amounts of the warrants to Hassett's bank account were also received. A deposit slip in defendant's handwriting was likewise admitted showing the deposit of $1200 in currency to defendant's wife's bank account the day two of these warrants (for a total of $6637.20) were issued.

Error is assigned in the admission of these exhibits (claims, warrants and deposit slips) mainly on the grounds they relate to district 2 rather than No. 1, referred to in the indictment, and that the transactions evidenced by the exhibits are not shown to have been completed crimes. In this connection it appears that on the same day the first of these warrants was issued (for $10,931.14) to Miller he paid defendant $1000 of the amount. Defendant testified this was in satisfaction of a loan he made John Ward, Miller's brother-in-law and real owner of the contract relating to drainage district 2, taken in Miller's name. Defendant claims to have made this loan in an Omaha gambling place when Ward ran out of money. It also appears that on the same day the warrants totaling $6637.20 were issued $5050 was deposited to the bank account of defendant's mother. Defendant said this was also in repayment of a loan by his mother to Hassett. The deposit slips showing deposits to Hassett's account of the $6637.20 and to defendant's mother's account of the $5050 were in defendant's handwriting. No complaint is made of the admission of evidence regarding the payments of $1000 and $5050.

We think the fact these exhibits related to Boyer district 2, rather than No. 1, did not render them inadmissible. There is merely an imaginary line, or line on paper, between the two districts. One begins where the other leaves off. The supervisors were trustees of both. Of course defendant was not indicted for conspiracy to injure the funds of Boyer district 2. Nevertheless what was done with respect to that district has at least some fair tendency to show concert of action between the conspirators and constitutes some evidence, circumstantial in nature, of the existence of a conspiracy to injure the funds of district 1. It cannot be said this evidence is wholly disconnected

with and has no relevancy to the conspiracy charged in the indictment. The jury might well have concluded from all the evidence defendant conspired with Hassett and Gibson to injure the funds of both districts 1 and 2. If so, a finding of guilt of the crime charged obviously would be warranted.

As we have indicated, we are clear the exhibits above referred to were admissible even though the transactions they evidence may not, in themselves, have constituted completed crimes. We have carefully considered the decisions defendant cites at this point. None involves a charge of conspiracy where the gist of the offense is the unlawful agreement or combination. (State v. Thompson, supra, 241 Iowa 16, 22, 39 N.W.2d 637, 641, and citations.) They are all cases of obtaining money or property by false pretenses which hold merely that other similar pretenses made to the same person or to persons other than the victim of the crime charged may not be shown in evidence, as bearing upon defendant's intent, unless there is evidence of the falsity of such pretenses. The logic and soundness of the decisions cited is apparent. The making of like pretenses to the same person or to others is no proof of criminal intent in making the pretenses complained of unless they are shown to be false.

Even in the class of precedents defendant cites it is not necessary, for evidence of similar pretenses to be admissible, to show that completed crimes were committed by obtaining money or property by such means. It is only necessary to prove the falsity of the similar pretenses or, in other words, an attempt— though unsuccessful—to commit a like offense at a time not too remote. State v. Huckins, 212 Iowa 283, 291, 234 N.W. 554. See also State v. Bolds, 244 Iowa 278, 283, 284, 55 N.W.2d 534, 536; State v. Konzen, 186 Iowa 1057, 1063, 171 N.W. 137.

 Error is claimed in the admission of the sixteen checks, referred to in Division XII, of B & H Materials, payable to cash, written by L. J. Gibson or Robert Gibson at the former's direction in amounts that total $16,980. As stated, they are dated within a day or two of the issuance of sixteen warrants to B & H. As we have intimated we think, when considered together with all other evidence, these exhibits were properly re-

ceived as a link in the chain of circumstances leading to a reasonable inference of guilt. "Many facts of no consequence in isolation may be proved because of the persuasiveness of their united effect." 15 C. J. S., Conspiracy, section 92b, pages 1142, 1143.

■■■ Where, as here, there is evidence of a conspiracy, everything said, written or done by any of the conspirators in furtherance of the common purpose is deemed to have been said, written or done by every one of them and may be proved against each. See State v. Keul, 233 Iowa 852, 856, 5 N.W.2d 849, 852, and citations; Weber v. Paul, supra, 241 Iowa 121, 128, 129, 40 N.W.2d 8, 12, 13; 11 Am. Jur., Conspiracy, section 40.

Perhaps at this point (although it may belong in the preceding division) we should observe that Code section 739.10 provides, so far as pertinent, "If any * * * county * * * officer * * * directly or indirectly accept any valuable consideration, * * * other than the compensation allowed him by law, conditioned upon said officer's doing or performing any official act, * * * he shall be imprisoned in the penitentiary * * *." The finding is warranted that defendant conspired to injure the funds of Boyer district 1 by violating this provision. The indictment is broad enough to embrace such a charge and bills of particulars refer to acts in violation of this statute.

■■■ XIV. Objections to instructions to the jury are without merit. Some of them must be deemed waived by failure to argue them. State v. Walters, 244 Iowa 1253, 1260, 58 N.W.2d 4, 7, and citations; State v. Case, 247 Iowa 1019, 1030, 75 N.W. 2d 233, 240. Other complaints against the instructions are for the most part hypercritical. We feel extended discussion of them is not called for.

Other contentions of defendant have also been found not to merit discussion.—Affirmed.

All JUSTICES concur.